# Illinois Official Reports

## Appellate Court

---

### *Bank of America, N.A. v. Schroeder*, 2021 IL App (3d) 200339

---

| | |
|---|---|
| Appellate Court Caption | BANK OF AMERICA, N.A., Plaintiff-Appellee, v. BONITA J. SCHROEDER, TERRY A. SCHROEDER, U.S. BANK NATIONAL ASSOCIATION, UNKNOWN OWNERS, and NONRECORD CLAIMANTS, Defendants (Bonita J. Schroeder and Terry A. Schroeder, Defendants-Appellants). |
| District & No. | Third District<br>No. 3-20-0339 |
| Filed | July 29, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Rock Island County, No. 08-CH-525; the Hon. James G. Conway Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Philip E. Koenig, of Rock Island, for appellants.<br><br>Melissa J. Lettiere, of Plunkett Cooney, P.C., and Chad Lewis and Brian R. Merfeld, of McCalla Raymer Leibert Pierce, LLC, both of Chicago, for appellee. |

Panel JUSTICE DAUGHERITY delivered the judgment of the court, with opinion.
Justices O'Brien and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1        Plaintiff, Bank of America, N.A., filed an amended complaint against defendants, Bonita and Terry Schroeder, and others seeking to foreclose upon a mortgage or equitable lien held on certain real property in Rock Island County, Illinois. Defendants challenged plaintiff's right to foreclose, claiming as affirmative defenses that (1) plaintiff lacked standing, (2) the note was forged, and (3) plaintiff had unclean hands. Plaintiff filed a motion for partial summary judgment on its equitable lien claim, and defendants filed a cross-motion for summary judgment on their affirmative defenses. After a hearing, the trial court granted plaintiff's motion and denied defendants' motion. Defendants appeal. We affirm the trial court's judgment.

¶ 2                                      I. BACKGROUND

¶ 3        On November 26, 2008, plaintiff filed a complaint to foreclose upon a mortgage held on certain residential real property owned by defendants in Rock Island County, Illinois. The complaint generally followed the form set forth for mortgage foreclosures in the applicable Illinois statute (see 735 ILCS 5/15-1504(a) (West 2008)). Of relevance to this appeal, the complaint alleged that defendants borrowed $476,500; that the debt was secured by a mortgage dated March 2003 on the subject property; that the mortgagee, trustee, or grantee in the mortgage was Suntrust Mortgage, Inc. (Suntrust); that defendants defaulted on the loan in July 2008; that defendants currently owed over $440,000 in principal on the loan, plus interest, costs, and fees; and that plaintiff was the current holder of the mortgage.

¶ 4        Although not quite clear from the record, it does not appear that a copy of the note was attached to the complaint.[1] A copy of the mortgage, however, was attached to the complaint. The mortgage listed Suntrust as the lender/mortgagee and defendants as the borrowers/mortgagors. The mortgage was signed by defendants, was notarized, and was duly recorded. The mortgage referred to the terms of the note and provided, among other things, that the note could be sold one or more times without prior notice to defendants.

¶ 5        Over the next several years, the parties litigated this case with various proceedings taking place in the trial court. In February 2009, defendants filed their answer and affirmative defenses to the original complaint. In their affirmative defenses, defendants alleged, among other things, that plaintiff lacked standing to bring a mortgage foreclosure action against defendants. Defendants pointed out in their lack of standing defense that plaintiff was not the mortgagee set forth in the mortgage attached to the complaint, that the note was not attached to the complaint, and that the note had not been produced by plaintiff.

_____

[1]Plaintiff alleged in the original complaint that copies of the note and mortgage were attached. However, defendants asserted in their initial answer and affirmative defenses that the note was not attached, and a copy of the note cannot be found in the portion of the trial court record that immediately follows the complaint that was filed.

¶ 6        Plaintiff filed a response to defendants' affirmative defenses and attached to the response copies of the note and a written assignment that plaintiff had received for the mortgage. The note was executed in March 2003 on the same date as the mortgage and was in the amount of $476,500. The note was signed by defendants as the borrowers,[2] but was not notarized, and listed Suntrust as the lender. The note indicated, among other things, that the defendants' promise to pay would be secured by a mortgage.

¶ 7        The written assignment indicated that Suntrust had assigned its interest in defendants' mortgage to plaintiff "prior to November 26, 2008." The assignment also provided that Suntrust's interest in the note was being assigned to plaintiff as well. The assignment was undated, had not been notarized until February 2009, and had not been recorded until March 2009.

¶ 8        In October 2013, plaintiff filed a motion for summary judgment. Defendants opposed the motion, claiming that genuine issues of material fact existed as to whether plaintiff had standing to foreclose on the mortgage and whether defendants' signatures on the note and the mortgage had been forged. In support of defendants' claim of forgery, defendant Bonita filed an affidavit attesting that she and defendant Terry did not sign the note or mortgage and that they were in California, and not Rock Island County, on the date that the note and mortgage were allegedly signed. Bonita attached to her affidavit receipts and charge slips for that time period from California. Defendant Terry, however, filed no such affidavit. Following a hearing, the trial court denied plaintiff's motion for summary judgment. In making its ruling, the trial court found that (1) a genuine issue of material fact remained as to whether plaintiff had standing to bring the foreclosure action because the mortgage and note did not identify plaintiff as the lender or the holder of the mortgage and the written assignment did not specifically state when the mortgage was assigned; (2) a genuine issue of material fact remained as to whether the signatures on the note had been forged since the signatures on the note were not notarized and since Bonita attested that she and Terry (defendants) were not in Rock Island County on the date that the note was allegedly signed; and (3) defendants' signatures on the mortgage, which were notarized, were authentic.

¶ 9        In July 2017, plaintiff filed an amended complaint and added two additional counts, seeking to have an equitable lien on the property declared and to foreclose upon that lien. As with the original complaint, the amended complaint generally followed the form for mortgage foreclosures set forth in the applicable Illinois statute (see 735 ILCS 5/15-1504(a) (West 2016)). In the equitable lien claim (also referred to hereinafter at times as the equitable subrogation/equitable lien claim), count II of the amended complaint, plaintiff alleged that U.S. Bank National Association (U.S. Bank) loaned defendants $472,000 (the U.S. Bank loan) for the purchase of the home in June 2002; that the U.S. Bank loan was secured by a mortgage on the subject property; that in March 2003, Suntrust loaned defendants $476,500 (the Suntrust loan) to refinance the U.S. Bank loan; that the majority of the Suntrust loan proceeds were disbursed to pay off the U.S. Bank loan; that as a result, the U.S. bank loan and mortgage were satisfied, discharged, and released; that the remainder of the Suntrust loan proceeds (approximately $2500) was disbursed to defendants; that the Suntrust loan was documented by a note and was intended to be secured by a mortgage against the subject property; that in refinancing the U.S. Bank loan, Suntrust intended to have a first mortgage lien against the

_____

[2]Defendants disputed that they signed the note and alleged that the note had been forged.

subject property in place of the U.S. Bank mortgage; that Suntrust's payoff of the U.S. Bank loan was involuntary; that defendants received a benefit from the Suntrust loan in that the U.S. Bank loan was paid off and the U.S. Bank mortgage was released; that as a result, it would be inequitable for defendants to hold the subject property free and clear of any mortgage lien; and that plaintiff acquired the Suntrust note and the Suntrust mortgage pursuant to an assignment from Suntrust, which was initially recorded in March 2009. Plaintiff, as successor in interest to Suntrust, sought a declaration that the Suntrust mortgage was a prior and superior lien to any interest defendants might have in the subject property and to foreclose upon that equitable lien.

¶ 10    Attached to the amended complaint were various supporting documents, including copies of the Suntrust note and mortgage, the U.S. Bank mortgage, a settlement statement from the Suntrust loan, the recorded release of the U.S. Bank mortgage, and the written assignment of the Suntrust loan to plaintiff. In addition to those supporting documents, at the end of the note was an allonge dated August 2012, which contained a special indorsement from Suntrust making the Suntrust note payable to plaintiff.

¶ 11    Defendants challenged plaintiff's right to foreclose on either the mortgage or the equitable lien, claiming as affirmative defenses that (1) plaintiff lacked standing, (2) the Suntrust note was forged, and (3) plaintiff had unclean hands.

¶ 12    In October 2017, defendants filed motions to dismiss the amended complaint based upon their three affirmative defenses. Plaintiff filed a response and opposed the motions to dismiss. Plaintiff attached to its response a deposition of defendant Terry that was taken in May 2016. In the deposition, Terry acknowledged that he had faxed a letter to Suntrust in December 2009 seeking a loan modification. In the letter, Terry indicated, among other things, that he had purchased the subject property in June 2002 and that he had refinanced the property in 2003 with Suntrust. Following briefing and a hearing, the trial court later denied defendants' motions to dismiss.

¶ 13    In May 2018, plaintiff filed a motion for partial summary judgment on count II of its amended complaint, its request to have the trial court declare that plaintiff had an equitable lien on the subject property (the equitable lien claim or the equitable subrogation/equitable lien claim). Defendants filed a cross-motion for summary judgment on their affirmative defenses. A hearing was held on the motions in September and November 2018. By the time of the hearing, both sides had fully briefed the issues raised before the trial court. During the course of the hearing, plaintiff produced the original note and mortgage in open court for inspection. In addition, on the second day of the hearing, plaintiff sought leave to supplement its reply/response brief with the affidavit of Beverly Dumas to establish the foundation to admit some of the Suntrust loan records as business records. Dumas was an assistant vice president for Suntrust, which was still the mortgage servicer for defendants' loan. As part of the foundational information that was set forth, Dumas attested in her affidavit that "[b]ased on [her] review of the Loan Transfer History, [defendants'] Loan was sold to Bank of America on or about June 14, 2004 and prior to the above captioned matter being filed in the Circuit Court of Rock Island County." Attached to Dumas's affidavit were two pages of bank records. The first page of records, which had the heading "DELINQUENCY" at the top of the page, listed "BANK OF AMERICA" under a section labeled "INVESTOR HEADER INFO." An entry under that section listed "06/04" as the "SALE DATE." The second page of records, which had the heading "LOAN TRANSFER HISTORY" at the top of the page, contained a section

- 4 -

for "SALE TO BANK OF AMERICA." Under that section, the "TRAN DATE" was listed as "06/30/04," the "DATE PAID" was listed as "06/14/04," the "EFF DATE" was listed as "07/01/04," and the "EFF BALANCE" was listed as "469951.37." Defendants objected to plaintiff's request to supplement, and the trial court took the matter under advisement, along with its decision on the summary judgment motions.

¶ 14 In December 2018, the trial court issued its written ruling, granting plaintiff's motion for partial summary judgment on the equitable lien claim and denying defendants' motion for summary judgment on defendants' affirmative defenses. As part of that ruling, the trial court also granted plaintiff's request to supplement the record with the Dumas affidavit and considered that affidavit in ruling upon the summary judgment motions. The trial court later entered a judgment of foreclosure of the equitable lien and sale of the subject property. The subject property was subsequently sold at a sheriff's sale, and the trial court confirmed the sale. After the sale was confirmed, the mortgage foreclosure count of the first amended complaint was dismissed on plaintiff's motion. Defendants appealed.

¶ 15                                   II. ANALYSIS

¶ 16 On appeal, defendants argue that the trial court erred in granting summary judgment for plaintiff on plaintiff's equitable lien claim (count II of the amended complaint) and in denying defendants' cross-motion for summary judgment on the affirmative defenses. Defendants assert that summary judgment should not have been granted for plaintiff and should have been granted for defendants instead because the pleadings and supporting documents established that (1) plaintiff lacked standing to bring the foreclosure action, (2) the note was forged and could not be enforced by equitable lien, and (3) plaintiff had unclean hands and was not entitled to an equitable remedy. We will address each of those arguments in turn.

¶ 17                        A. Standard of Review and Legal
                    Principles That Apply to Summary Judgment

¶ 18 The purpose of summary judgment is not to try a question of fact but to determine if one exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions on file, and affidavits, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. See 735 ILCS 5/2-1005(c) (West 2018); *Adams*, 211 Ill. 2d at 43. Summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts. *Adams*, 211 Ill. 2d at 43. Although summary judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt. *Id.* In appeals from summary judgment rulings, the standard of review is *de novo*. *Id.* When *de novo* review applies, the appellate court performs the same analysis that the trial court would perform. *Direct Auto Insurance Co. v. Beltran*, 2013 IL App (1st) 121128, ¶ 43. A trial court's grant of summary judgment may be affirmed on any basis supported by the record. *Home Insurance Co. v. Cincinnati Insurance Co.*, 213 Ill. 2d 307, 315 (2004).

¶ 19                              B. Standing to Bring the Foreclosure Action

¶ 20        As noted above, in support of their argument on appeal, defendants assert first that summary judgment should not have been granted for plaintiff and should have been granted for defendants instead because plaintiff lacked standing to bring a foreclosure action against defendants. As evidence or indications of plaintiff's lack of standing, defendants point out that (1) plaintiff did not attach a copy of the note to the original complaint; (2) both the original complaint and the mortgage attached thereto listed Suntrust, and not plaintiff, as the mortgagee; (3) defendants filed an answer denying that plaintiff had standing and asserted lack of standing as an affirmative defense; (4) nothing in plaintiff's original complaint showed that plaintiff was an assignee of the Suntrust loan; (5) the assignment that plaintiff later filed was undated and was not notarized until after the original complaint had been filed; (6) producing the note in open court 10 years after the original complaint had been filed did nothing to establish plaintiff's standing; and (7) plaintiff produced no proof that it owned or held the note and mortgage at the time the original complaint was filed. Based upon the alleged lack of standing, defendants ask that we reverse the trial court's grant of summary judgment for plaintiff, that we enter summary judgment in favor of defendants, and that we order that plaintiff's foreclosure action be dismissed with prejudice.

¶ 21        Plaintiff argues that the trial court's grant of summary judgment was proper and should be upheld. Plaintiff asserts that the pleadings and supporting documents showed that plaintiff had acquired the Suntrust loan in June 2004, four years before plaintiff had filed the instant foreclosure action, and that there was no genuine issue of material fact as to plaintiff's standing to bring suit. More specifically, plaintiff contends that it proved its standing to file the foreclosure action by producing the original note with the allonge attached for inspection in open court, by presenting the written assignment of the mortgage, and by submitting the Dumas affidavit. In making that contention, plaintiff acknowledges that the written assignment was not notarized or recorded until after the original complaint was filed but places no significance upon that fact and maintains, instead, that the written assignment was merely a memorialization of the prior assignment of the mortgage and note from Suntrust to plaintiff. Plaintiff also points out that defendants did not present any evidence contradicting the Dumas affidavit, challenging the date of transfer, showing that plaintiff was not in possession of the note when the lawsuit was filed, or establishing that another person or entity was the holder of the note at that time. For all of the reasons stated, plaintiff asks that we affirm the trial court's grant of summary judgment for plaintiff on its equitable lien claim.

¶ 22        The purpose of the doctrine of standing is to preclude parties who have no interest in a particular controversy from filing suit and to ensure that issues are raised and argued only by parties with a real interest in the outcome of the controversy. See *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999); *In re M.T.*, 221 Ill. 2d 517, 528 (2006). A plaintiff is not required to allege facts to establish standing. *Wexler v. Wirtz Corp.*, 211 Ill. 2d 18, 22 (2004). Rather, lack of standing is an affirmative defense that must be plead and proven by the defendant. *Id.*; *Glisson*, 188 Ill. 2d at 224. Whether a plaintiff has standing to bring an action must be determined as of the date the lawsuit was filed. *Deutsche Bank National Trust Co. v. Gilbert*, 2012 IL App (2d) 120164, ¶ 15. If a plaintiff does not have standing, the action must be dismissed because the lack of standing negates the plaintiff's cause of action. *Wexler*, 211 Ill. 2d at 22.

- 6 -

¶ 23    The Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/15-1101 *et seq.* (West 2008)) provides the exclusive procedure for foreclosing upon a mortgage in Illinois. See *id.* § 15-1106(a)(1); *Mortgage Electronic Registration Systems, Inc. v. Barnes*, 406 Ill. App. 3d 1, 4 (2010). Under the Foreclosure law, a mortgage foreclosure action may be filed by a mortgagee or by an agent or successor of a mortgagee. See 735 ILCS 5/15-1208, 15-1504(a)(3)(N) (West 2008); *Bayview Loan Servicing, LLC v. Cornejo*, 2015 IL App (3d) 140412, ¶ 12. A plaintiff may establish a *prima facie* case for mortgage foreclosure by filing a complaint that complies with the pleading requirements of section 15-1504(a) of the Foreclosure Law. See 735 ILCS 5/15-1504(a), (b) (West 2008); *Barnes*, 406 Ill. App. 3d at 6. Once the plaintiff has established a *prima facie* case for foreclosure, the burden shifts to the defendant to prove any affirmative defenses that the defendant has raised, including the lack of standing. See *Farm Credit Bank of St. Louis v. Biethman*, 262 Ill. App. 3d 614, 622 (1994).

¶ 24    In the instant case, after reviewing the pleadings and supporting documents presented in the summary judgment proceeding, we find that plaintiff's standing to file the original mortgage foreclosure complaint was clearly established. Plaintiff's original complaint generally followed the form set forth in section 15-1504 of the Foreclosure Law and was sufficient, therefore, to establish a *prima facie* case for mortgage foreclosure. See 735 ILCS 5/15-1504(a), (b) (West 2008); *Barnes*, 406 Ill. App. 3d at 6. Plaintiff attached to the complaint a copy of the mortgage and alleged that a copy of the note was also attached but apparently failed to actually attach a copy of the note to its pleading. When defendants filed their initial answer and affirmative defenses and pointed out that a copy of the note had not been attached to the original complaint, plaintiff filed a prompt response and attached a copy of the note to that response.

¶ 25    In addition, although plaintiff was not listed in the Suntrust note or mortgage, plaintiff filed as supporting documents in the summary judgment proceeding the Dumas affidavit and the accompanying business records, which showed that defendants' loan had been assigned to plaintiff in June 2004. The Dumas affidavit provided the specific date of the assignment, and the business records further confirmed the June 2004 date as the assignment date. As additional evidence that plaintiff was the holder of the note and mortgage, plaintiff presented the note and mortgage for inspection in open court and submitted the allonge, memorializing the transfer of the note, and the assignment, memorializing the transfer of the mortgage and the note.

¶ 26    Faced with plaintiff's evidence of standing, defendants presented no counteraffidavit or other evidence to establish that plaintiff was not the holder of the Suntrust note and mortgage at the time the instant mortgage foreclosure action was filed. Nor did defendants seek to continue the proceedings so that they could depose Dumas after the Dumas affidavit was filed by plaintiff. Based upon the evidence presented, we conclude that no genuine issue of material fact existed as to plaintiff's standing to bring the foreclosure action. The trial court, therefore, correctly found that plaintiff had standing to file suit and rightly denied defendant's motion for summary judgment on defendants' lack of standing affirmative defense.

¶ 27    Having reached that conclusion, we must comment upon the case of *Gilbert*, a case that is heavily relied upon by defendants in support of their claim of lack standing. Although we recognize that the facts of *Gilbert* are generally similar to the facts of the present case, we nevertheless find that the two cases are distinguishable. In *Gilbert*, as in the present case, the plaintiff bank pointed to a written mortgage assignment and an affidavit from an employee of the loan servicer to rebut the defendant borrower's claim of lack of standing. Unlike the facts

of the present case, however, the written mortgage assignment in *Gilbert* made no reference to the date that the assignment took place and the person who made the affidavit in *Gilbert* did not attach any records to his affidavit to support his statement of when the assignment occurred. See *Gilbert*, 2012 IL App (2d) 120164, ¶¶ 17-20. Based upon those factual differences, we decline to follow *Gilbert* here.

¶ 28                    C. Defendants' Claim of Forgery and Unclean Hands

¶ 29    Defendants assert next on appeal that summary judgment should not have been granted for plaintiff and should have been granted for defendants instead because plaintiff was not entitled to an equitable lien on the property since defendants' signatures on the note were forged and since plaintiff had unclean hands in trying to enforce the forged note. Defendants again ask this court, therefore, to reverse the trial court's grant of summary judgment for plaintiff and to enter summary judgment for defendants instead.

¶ 30    Plaintiff argues that the trial court's grant of summary judgment was proper and should be upheld. Plaintiff asserts that the trial court correctly determined that plaintiff had an equitable lien on the property and rightly rejected defendants' forgery and unclean hands defenses because (1) the undisputed facts in this case showed that the proceeds of the Suntrust loan were used to the benefit of defendants to pay off defendants' valid prior U.S. Bank loan that was secured by the valid prior U.S. Bank mortgage against the subject property; (2) under the doctrine of equitable subrogation, plaintiff was allowed, therefore, to be subrogated to the rights of the preexisting mortgage lien (the U.S. Bank mortgage) that was paid off with the proceeds of the Suntrust loan; (3) any alleged forgery would not bar plaintiff's right to foreclose upon an equitable lien on the property because the foreclosure of the equitable lien was not premised upon the validity or enforceability of the Suntrust note and mortgage; (4) defendants would have received an unjust benefit and windfall if plaintiff was not granted an equitable lien on the property subrogated to the first lien position of the U.S. Bank mortgage; and (5) defendants presented no evidence of fraud, forgery, or wrongdoing, and the trial court found that the signatures on the mortgage were authentic. In the alternative, plaintiff asserts that defendants' forgery and unclean hands defenses fail in this case because the signatures on the note and mortgage were authorized or ratified by defendants. For all of the reasons set forth, plaintiff again asks that we affirm the trial court's judgment.

¶ 31    Under the doctrine of equitable subrogation, one who involuntarily pays the debt of another may be allowed to succeed to the rights of the original creditor (step into the shoes of or enforce the rights of the original creditor) with respect to the debt paid. See *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 319 (1992); *Union Planters Bank, N.A. v. FT Mortgage Cos.*, 341 Ill. App. 3d 921, 925 (2003); see also *Shchekina v. Washington Mutual Bank*, No. 08 C 6094, 2012 WL 3245957, *3-4 (N.D. Ill. Aug. 7, 2012);[3] Restatement (Third) of Property: Mortgages § 7.6 (1997). Equitable subrogation is a creation of chancery and is used to prevent injustice and unjust enrichment. *LaFramboise*, 149 Ill. 2d at 319; *Wilmington Savings Fund Society, FSB v. Zarkhin*, 2019 IL App (2d) 180439, ¶ 29. There is no general rule for when equitable subrogation will be applied—the right depends upon the equities of each particular

_____

[3]Although unpublished federal decisions are not binding or precedential in Illinois state courts, nothing prevents an Illinois state appellate court from using the same reasoning and logic as that used in an unpublished federal decision. See *CitiMortgage, Inc. v. Parille*, 2016 IL App (2d) 150286, ¶ 37.

case. *LaFramboise*, 149 Ill. 2d at 319; *Aames Capital Corp. v. Interstate Bank of Oak Forest*, 315 Ill. App. 3d 700, 706 (2000). Equitable subrogation will not be allowed, however, when doing so will lead to an inequitable result. *LaFramboise*, 149 Ill. 2d at 319.

¶ 32    A related principle of equity, the imposition of an equitable lien, is a remedy for a debt that cannot be legally enforced but, based upon considerations of right and fairness, should be recognized. *Paliatka v. Bush*, 2018 IL App (1st) 172435, ¶ 28; see also *Watson v. Hobson*, 401 Ill. 191, 201 (1948). A court may find that an equitable lien exists either where the parties expressed in writing their intention to make real property, personal property, or some fund the security for a debt but did not use express lien language or where considerations of fairness and justice would require imposing a lien even without an express agreement between the parties. *Paliatka*, 2018 IL App (1st) 172435, ¶ 28. To assert an equitable lien, the plaintiff must establish the following two elements: (1) a debt, duty, or obligation owed to the plaintiff by the defendant; and (2) the existence of a *res*, an asset that in some way is particularly related to the debt or obligation. *Id.*; *Parille*, 2016 IL App (2d) 150286, ¶ 33.

¶ 33    After reviewing the record in the present case, we find that plaintiff was clearly entitled to be subrogated to the rights of U.S. Bank with regard to defendants' debt and to have an equitable lien declared on the subject property to secure the payment of that debt. As the pleadings and supporting documents established, the material facts regarding plaintiff's equitable subrogation/equitable lien claim were undisputed: defendants owed a valid debt to U.S. Bank; the debt was secured by a valid mortgage on the subject property; Suntrust involuntarily paid off defendants' U.S. Bank debt to protect its own interest; as a result of that payoff, defendants' U.S. Bank debt was discharged and defendants' U.S. Bank mortgage was released; and plaintiff was subsequently assigned Suntrust's interest in defendants' loan. Those undisputed facts were sufficient to establish plaintiff's right to equitable subrogation (see *LaFramboise*, 149 Ill. 2d at 319; *Union Planters Bank, N.A.*, 341 Ill. App. 3d at 925; see also *Shchekina*, 2012 WL 3245957, at *3-4) and to prove the elements required for an equitable lien to apply (see *Paliatka*, 2018 IL App (1st) 172435, ¶ 28; *Parille*, 2016 IL App (2d) 150286, ¶ 33). The trial court, therefore, properly granted summary judgment for plaintiff on its equitable lien claim (count II of the amended complaint).

¶ 34    In reaching that conclusion, we reject defendants' argument regarding the impact that the alleged forgery of the Suntrust note would have on plaintiff's equitable subrogation/equitable lien claim. As the trial court correctly found, the alleged forgery of the Suntrust note would not prevent plaintiff from being equitably subrogated to the rights of U.S. Bank in defendants' debt or from obtaining an equitable lien on the subject property. See *Deutsche Bank National Trust Co. v. Payton*, 2017 IL App (1st) 160305, ¶ 30 (finding that under the doctrine of equitable subrogation, the prior homeowners' interest in the property was subordinate to the mortgage assignee's interest, even though the ownership of the home had allegedly been transferred to the current owners through a forged deed, where the assignor lender had paid off the prior home owners' home loans and had extinguished the prior home owners' mortgages on the subject property and where to allow the prior homeowners to take the subject property without a mortgage lien attached would unjustly enrich the prior homeowners); *Shchekina*, 2012 WL 3245957, at *4-6 (finding through equitable subrogation and the imposition of an equitable lien that the bank holding the last mortgage could step into the shoes and enforce the rights of the bank that held the most recent authentic mortgage, even though the homeowner's signature appeared to have been forged on the last few refinance mortgages); *Parille*, 2016 IL

App (2d) 150286, ¶¶ 38-39 (recognizing that the federal court's discussion in the *Shchekina* case was well reasoned and persuasive on the issue of whether the invalidity of a later mortgage could potentially support a claim for an equitable lien but declining to find that the assignee of the subsequent lender had sufficiently pled an equitable subrogation/equitable lien claim because the assignee was seeking to enforce the newest mortgage rather than the mortgage to which the assignee would have been subrogated—relief that was not available under an equitable subrogation/equitable lien claim). To rule otherwise here would be to allow defendants to be unjustly enriched and to reap a huge windfall at plaintiff's expense—to own their home free of any debt or mortgage without having paid off the valid prior home loan from U.S. Bank. See *Payton*, 2017 IL App (1st) 160305, ¶ 30; *Shchekina*, 2012 WL 3245957, at *4-6. In addition, recognizing plaintiff's equitable subrogation/equitable lien claim in this case will not lead to an inequitable result as it places defendants into no worse position than they were in before Suntrust paid off the prior U.S. Bank loan and had the prior U.S. Bank mortgage released. See *LaFramboise*, 149 Ill. 2d at 319.

¶ 35 We also reject defendants' argument regarding unclean hands. As plaintiff correctly notes, defendants presented no evidence in the summary judgment proceeding to establish that plaintiff had unclean hands as to the underlying transaction or as to any of the foreclosure proceedings. Indeed, although plaintiff does not contest the alleged forgery (for the purpose of the equitable lien claim), the trial court specifically found that defendants' signatures on the mortgage were genuine, and the record in this case shows that defendant Terry had previously acknowledged as part of a loan modification request that he had refinanced defendants' home loan through Suntrust in 2003. Defendants' conclusory allegations of fraud, forgery, and unclean hands in this case were unsupported and were properly rejected by the trial court.

¶ 36 Finally, because we have rejected defendants' forgery and unclean hands defenses, we need not address plaintiff's alternative assertion that those defenses fail because defendants ratified or authorized the signatures on the note and mortgage.

¶ 37 III. CONCLUSION

¶ 38 For the foregoing reasons, we affirm the judgment of the circuit court of Rock Island County.

¶ 39 Affirmed.