# Illinois Official Reports

## Appellate Court

---

*Fifth Third Mortgage Co. v. McCord*, 2021 IL App (1st) 200512

---

| | |
|---|---|
| Appellate Court Caption | FIFTH THIRD MORTGAGE COMPANY, Plaintiff-Appellee, v. ANGELA McCORD; CARL McCORD, a/k/a Carl N. McCord; THE UNITED STATES OF AMERICA SECRETARY OF HOUSING AND URBAN DEVELOPMENT; THE STATE OF ILLINOIS; CAPITAL ONE BANK (USA), N.A., f/k/a Capital One Bank; UNKNOWN OWNERS; and NONRECORD CLAIMANTS, Defendants (Angela McCord, Defendant-Appellant). |
| District & No. | First District, Fifth Division<br>No. 1-20-0512 |
| Filed<br>Rehearing denied | October 29, 2021<br>December 1, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 16-CH-09991; the Hon. Freddrenna Lyle, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Carla Sherieves, of CMS Law, LLC, of Chicago, for appellant.<br><br>Nicole H. Daniel and Alexander N. Wright, of Dinsmore & Shohl LLP, of Chicago, for appellee. |

Panel                         JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Connors concurred in the judgment and opinion.

## OPINION

¶ 1       The plaintiff-appellee, Fifth Third Mortgage Company (Fifth Third), filed a foreclosure complaint in the circuit court of Cook County against the defendants, Angela McCord and Carl McCord. However, the matter subsequently proceeded on appeal only as to Ms. McCord. Thus, although Mr. McCord's name appears in the caption, he is not a party to this appeal. In the proceedings in the trial court, Ms. McCord argued that Fifth Third could not move forward with foreclosure proceedings because it had failed to conduct a face-to-face meeting with her prior to initiating the foreclosure as required by federal regulations. The circuit court rejected Ms. McCord's arguments and granted summary judgment in favor of Fifth Third. The circuit court also entered an order confirming the sale of the property. Ms. McCord now appeals. For the following reasons, we vacate the judgment of the circuit court of Cook County and remand the case for further proceedings.

¶ 2                                    BACKGROUND

¶ 3       On September 24, 2009, Ms. McCord executed a promissory note in the amount of $231,418, secured by a mortgage on a property located at 3901 St. Charles Place, Bellwood, Illinois (the property). Ms. McCord's husband, Carl McCord, signed the mortgage agreement along with Ms. McCord, but only Ms. McCord signed the promissory note. Fifth Third was the mortgagee.

¶ 4       In 2012, Mr. and Ms. McCord entered into a loan modification agreement with Fifth Third after they defaulted on their mortgage payments. And in October 2014, Ms. McCord individually entered into a second loan modification agreement with Fifth Third.

¶ 5       On July 28, 2016, Fifth Third filed a foreclosure complaint against Mr. and Ms. McCord.[1] It is from that complaint that the subsequent proceedings and this appeal arise. On December 21, 2016, Mr. and Ms. McCord moved to dismiss the foreclosure complaint on the basis that Fifth Third failed to conduct a face-to-face meeting with them prior to filing the foreclosure complaint, as required for mortgages insured by the Department of Housing and Urban Development (HUD). In response, Fifth Third argued that it was exempt from conducting a face-to-face meeting with Ms. McCord because, in February 2014, Fifth Third received a cease-and-desist letter from Ms. McCord's former attorney. Fifth Third claimed that the letter requested that Fifth Third cease and desist any further communication with Ms. McCord regarding the collection of the debt pursuant to the Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.* (2012)).

¶ 6       Fifth Third attached, to its response, the letter from Ms. McCord's former counsel, which was titled, "Limited Power of Attorney" and was dated February 1, 2014. The February 1,

---

[1]The record shows that Fifth Third had previously filed a foreclosure action against Mr. and Ms. McCord in 2015. That action was dismissed without prejudice and is not relevant to this appeal.

2014, letter stated that Ms. McCord appointed her former counsel to act as her "attorney-in-fact to contact and negotiate with my mortgage lender(s) to resolve their mortgage problems including but not limited to, a loan restructure, forbearance agreement, postponement of sale, delay of foreclosure proceedings, or negotiation of short sale payoff on [the property]." The February 1, 2014, letter further stated:

> "Grant of Authority: I [Ms. McCord] hereby grant my attorney-in-fact full power and authority to discuss the terms of loan(s), to negotiate the terms of my loan(s) with my mortgage lender(s), to release my financial information to the lender(s) and to negotiate and/or settle any claims, liens, suits, judgments, and/or disputes concerning the above described real property on my behalf. I fully understand that the terms of any mortgage reconstructing settlement will be disclosed to me.

> I grant my attorney-in-fact full power and authority to do, take and perform each and every act or thing whatsoever necessary or proper to be done in exercise or any of the rights and powers granted in this instrument as fully to all intents and purposes as I might or could do if personally present with full power of substitution or revocation, and by this instrument I ratify and confirm whatever act or thing that my attorney-in-fact shall lawfully do or cause to be done by virtue of this limited power of attorney and the rights and power granted by this instrument.

> Compliance with Fair Debt Collection Practices Act: In accordance with section 805c of the Fair Debt Collection Practices Act, *the recipient of an original photocopy or facsimile of this document is specifically instructed by me to direct all future communications regarding my loan(s) to the designated attorney-in-fact*." (Emphasis added.)

¶ 7 Fifth Third also attached, to its response, a copy of a letter addressed from Fifth Third to Ms. McCord and dated March 10, 2014. The March 10, 2014, letter stated:

> "Fifth Third Bank acknowledges receipt of your cease[-]and[-]desist letter and we will refrain from any further communication regarding collection of your debt, unless we receive instructions otherwise. However, we also recently received your hardship application. If you would like to be considered for assistance, you should withdraw your cease[-]and[-]desist request in writing according to the instructions on the enclosed form. Otherwise, we will consider your cease[-]and[-]desist request as communication that you are no longer interested in a foreclosure prevention alternative."

There is no indication in the record that Ms. McCord or her attorney acknowledged or responded to Fifth Third's March 10, 2014, letter. The March 10, 2014, letter was not signed by anyone, nor did it provide the name of any Fifth Third representatives whom Ms. McCord should contact. It also did not contain the form referenced in the letter. Ms. McCord later denied ever having received the March 10, 2014, letter.

¶ 8 On July 17, 2017, the trial court struck Mr. and Ms. McCord's motion to dismiss the foreclosure proceedings and granted them leave to file an answer to Fifth Third's complaint. Mr. and Ms. McCord subsequently filed an amended answer, in which they raised an affirmative defense that Fifth Third failed to conduct a face-to-face meeting with them prior to initiating the foreclosure.

¶ 9    On December 4, 2017, Mr. and Ms. McCord issued written discovery to Fifth Third in the form of interrogatories and document production requests. On January 16, 2018, Fifth Third submitted its responses to the interrogatories and requests for production of documents. Kathy Bohman, an assistant vice president at Fifth Third, was the person who responded to the discovery requests on behalf of Fifth Third. Ms. Bohman attested that Fifth Third acted in accordance with Ms. McCord's instructions in the February 1, 2014, letter in not conducting a face-to-face meeting as required by HUD regulations.

¶ 10    On April 23, 2018, Fifth Third filed a motion for summary judgment and judgment of foreclosure, which is the subject of this appeal. The motion for summary judgment argued that Fifth Third had established a *prima facie* case for foreclosure because there was no genuine issue of material fact that Mr. and Ms. McCord had defaulted on their mortgage payments. Fifth Third again argued that it was not required to conduct a face-to-face meeting with Mr. and Ms. McCord. Citing 24 C.F.R. § 203.604(c)(3) (2018), Fifth Third averred that "[a] face-to-face meeting is not required if the mortgagor has clearly indicated that he will not cooperate in an interview." Fifth Third claimed that, because it had received a letter that it considered a cease-and-desist letter from Ms. McCord's then counsel (referring to the February 1, 2014, letter), Ms. McCord had requested that Fifth Third stop communicating with her, thereby making it "not even possible" to arrange a face-to-face meeting.

¶ 11    On June 15, 2018, Mr. and Ms. McCord filed a motion for leave to depose Ms. Bohman. The trial court granted the motion, and on October 23, 2018, counsel for the McCords deposed Ms. Bohman. During the deposition, Ms. Bohman responded to questions from the McCords' attorney regarding the March 10, 2014, letter, which Fifth Third claimed it sent to Ms. McCord and in which it acknowledged receipt of her cease-and-desist letter. Ms. Bohman disavowed knowledge of the March 10, 2014, letter. She agreed that the letter was not signed by anyone on behalf of Fifth Third and further testified that she did not know who drafted and sent the March 10, 2014, letter; in other words, she knew nothing about the March 10, 2014, letter.

¶ 12    On January 11, 2019, Mr. and Ms. McCord filed a motion for leave to file a combined response to Fifth Third's motion for summary judgment and cross-motion for summary judgment. The basis for the combined motion was that Fifth Third failed to comply with federal regulations for the HUD-insured mortgage, specifically, that it failed to make a reasonable effort to arrange a face-to-face meeting with the McCords prior to initiating foreclosure proceedings. Mr. and Ms. McCord averred that the February 1, 2014, letter that Ms. McCord's former counsel sent to Fifth Third was *not* a cease-and-desist letter but rather a limited power of attorney letter and third-party authorization, which requested Fifth Third to communicate directly with their counsel. Mr. and Ms. McCord pointed out that Fifth Third executed a loan modification agreement with Ms. McCord in October 2014, *after* it had already received the February 1, 2014, letter, which it claimed precluded a face-to-face meeting. The McCords argued that Fifth Third's action in negotiating a modification agreement with Ms. McCord showed that the February 1, 2014, letter was not a cease-and-desist admonishment. If it had been, Fifth Third would not have been able to work with Ms. McCord on the loan modification in October 2014. Additionally, as previously noted, Mr. and Ms. McCord asserted that they had never seen the March 10, 2014, letter allegedly sent from Fifth Third acknowledging receipt of a cease-and-desist letter, prior to July 6, 2018, when their foreclosure attorney showed it to them. They claimed the March 10, 2014, letter was "suspect" because it did "not

contain the name of the person who executed the letter and it differ[ed] in appearance to all the other written communications from Fifth Third."

¶ 13   On March 6, 2019, the trial court heard arguments from both parties on their respective motions for summary judgment. Following arguments, the trial court entered an order granting Fifth Third's motion for summary judgment and denying Mr. and Ms. McCord's cross-motion. The order stated: "The court finds that the February 2014 letter sent by [Ms. McCord's former counsel] was a cease and desist[;] the court also finds that *** because the cease and desist was never withdrawn, [Fifth Third] had no duty to conduct a face[-]to[-]face meeting with [Ms. McCord]." The trial court then entered summary judgment in favor of Fifth Third and also entered a judgment of foreclosure.

¶ 14   On December 5, 2019, the property was sold at a judicial foreclosure sale. Fifth Third moved to confirm the sale. Mr. and Ms. McCord responded by continuing to argue that Fifth Third failed to arrange the required face-to-face meeting. On February 11, 2020, the trial court entered an order granting Fifth Third's motion to confirm the sale.

¶ 15   On March 12, 2020, Mr. and Ms. McCord filed a notice of appeal challenging the February 11, 2020, judgment confirming the sale, as well as "[a]ll previous orders leading up to the order approving sale." As noted, only Ms. McCord has proceeded with the matter before this court and is the only defendant-appellant on appeal challenging the trial court's order granting summary judgment in favor of Fifth Third.

¶ 16                                                    ANALYSIS

¶ 17   We note that we have jurisdiction to consider Ms. McCord's challenge to the trial court's order granting summary judgment, as she filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 18   Ms. McCord presents the following sole issue for our review: whether the trial court erred in granting summary judgment in favor of Fifth Third. Ms. McCord argues that, because her mortgage was insured by HUD, federal regulations required Fifth Third to make a reasonable effort to conduct a face-to-face meeting with her prior to initiating foreclosure proceedings, which it failed to do. She claims that, contrary to the trial court's finding, the February 1, 2014, letter her former counsel sent to Fifth Third was *not* a cease-and-desist letter that requested Fifth Third to stop contacting her. She contends that, rather, it was a limited power of attorney and third-party authorization letter that requested Fifth Third to contact her then-counsel to work on mortgage repayment options. She points out that, after Fifth Third received the February 1, 2014, letter, it still contacted her in October 2014 to work on a loan modification, which shows that it could not have been a cease-and-desist letter and that Fifth Third did not consider it as such. Accordingly, Ms. McCord argues that Fifth Third was *obligated* to make a *reasonable* effort to conduct a face-to-face meeting with her prior to initiating foreclosure proceedings and, since it failed to do so, the trial court erred in granting summary judgment in favor of Fifth Third.

¶ 19   The purpose of summary judgment is to determine if a question of material fact exists. *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 42-43 (2004). Summary judgment should be granted only where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is clearly entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Adams*, 211 Ill. 2d at 43. "Although summary

- 5 -

judgment is to be encouraged as an expeditious manner of disposing of a lawsuit, it is a drastic measure and should be allowed only where the right of the moving party is clear and free from doubt." *Wells Fargo Bank, N.A. v. Norris*, 2017 IL App (3d) 150764, ¶ 19. We review appeals from summary judgment rulings *de novo*. *Id.*

¶ 20    The parties do not dispute that Ms. McCord's mortgage was insured by HUD and that federal regulations required Fifth Third to make a *reasonable* effort to conduct a face-to-face meeting with Ms. McCord prior to initiating foreclosure proceedings. See *Freedom Mortgage Corp. v. Olivera*, 2021 IL App (2d) 190462, ¶ 41 (in Illinois, noncompliance with HUD's regulations is a defense to foreclosure). The pertinent federal regulation requires the following, in relevant part, for HUD-insured mortgages:

> "(b) The mortgagee must have a face-to-face interview with the mortgagor, or make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced ***.

> (c) A face-to-face meeting is not required if:

> * * *

> (3) The mortgagor has clearly indicated that he will not cooperate in the interview,

> * * *

> (d) A reasonable effort to arrange a face-to-face meeting with the mortgagor shall consist at a minimum of one letter sent to the mortgagor certified by the Postal Service as having been dispatched. Such a reasonable effort to arrange a face-to-face meeting shall also include at least one trip to see the mortgagor at the mortgaged property, unless the mortgaged property is more than 200 miles from the mortgagee, its servicer, or a branch office of either, or it is known that the mortgagor is not residing in the mortgaged property." 24 C.F.R. § 203.604(b)-(d) (2018).

The lone dispute before us arises out of whether Fifth Third was exempted from the requirements of arranging a face-to-face meeting because Ms. McCord sent a letter to Fifth Third in February 2014, which Fifth Third considered to be a cease-and-desist letter. We note that Ms. McCord vigorously disputes that the letter was a cease-and-desist letter. Thus, Fifth Third and Ms. McCord are in conflict regarding the most important fact that underpins the granting of summary judgment: specifically, whether Fifth Third was absolved of its responsibility to arrange a face-to-face meeting because of Ms. McCord's February 1, 2014, letter.

¶ 21    Viewing the February 1, 2014, letter that Ms. McCord sent to Fifth Third, it authorized her attorney to interact with Fifth Third on *all* matters pertaining to the mortgage loan, on Ms. McCord's behalf. Indeed, the February 1, 2014, letter stated: "the recipient of *** this document is specifically instructed by me to direct all future communications regarding my loan(s) to the designated attorney-in-fact." Notably, the February 1, 2014, letter never used the words "cease-and-desist."

¶ 22    During oral arguments before this court, counsel for Fifth Third agreed that the February 1, 2014, letter directed Fifth Third to communicate only with Ms. McCord's former counsel

but averred that, as such, this indicated that Ms. McCord was no longer interested in a face-to-face meeting. Counsel claimed that the February 1, 2014, letter removed any requirement by Fifth Third to arrange a face-to-face meeting, either directly or through Ms. McCord's attorney. Conversely, Ms. McCord's counsel strongly argued before this court that the February 1, 2014, letter demonstrated Ms. McCord's *willingness* to work with Fifth Third on the mortgage and that the letter simply authorized her former counsel to take the lead on her behalf, given the nature of the potential foreclosure. Therefore, according to Ms. McCord's counsel, Fifth Third was not relieved of its obligation to make a *reasonable effort* to arrange the face-to-face meeting required as by federal regulations. Rather, the February 1, 2014, letter merely required Fifth Third to arrange the face-to-face meeting through her former counsel.

¶ 23    The fact that the parties disagree significantly as to the meaning of the February 1, 2014, letter establishes that there is a material factual issue in this case. In other words, this debate about the consequence of the February 1, 2014, letter shows that there is a genuine question as to whether Fifth Third was exempted from the face-to-face meeting requirement, which is at the core of the matter.

¶ 24    Further, Ms. McCord points out that, if Fifth Third truly believed that the February 1, 2014, letter was a cease-and-desist admonition, it fails to explain *how* it then worked with Ms. McCord in October 2014 to reach the second loan modification agreement. Stated another way, either Fifth Third followed what it believed was a cease-and-desist letter, or it did not, but it cannot act inconsistently in response to the same letter and then rely on only one interpretation as support for its right to summary judgment. During oral arguments, counsel for Fifth Third argued that the February 1, 2014, letter still allowed it to have loss mitigation discussions with Ms. McCord's former counsel but claimed that Fifth Third was nonetheless prevented from arranging a face-to-face meeting through counsel because the federal regulations at issue require the lender to contact the homeowner *directly* and not through an authorized agent. These arguments prompt many unresolved questions, such as: was the February 1, 2014, letter in fact a cease-and-desist letter? If so, was it later withdrawn, which allowed Fifth Third to work with Ms. McCord on the loan modification in October 2014? Or was the February 1, 2014, letter a limited power of attorney? If so, what specific powers did it reserve, and what was bestowed? Do the prevalent federal regulations allow for communication through agents? Or do the regulations require only direct communication with the homeowners? These unsettled questions establish the existence of material factual issues that go to the very foundation upon which the summary judgment rests.

¶ 25    There is an absence of Illinois law on this issue, which allows us to look to other jurisdictions as persuasive authority. *Pekin Insurance Co. v. Fidelity & Guaranty Insurance Co.*, 357 Ill. App. 3d 891, 898 (2005). Accordingly, we are guided by two cases from Florida's District Courts of Appeal, *Bank of America, N.A. v. Jones*, 294 So. 3d 341 (Fla. Dist. Ct. App. 2020), and *Derouin v. Universal American Mortgage Co.*, 254 So. 3d 595 (Fla. Dist. Ct. App. 2018).

¶ 26    In *Derouin*, the court held that the bank was not exempted from the face-to-face meeting requirement when there was no evidence that it was prohibited from asking the borrowers for a face-to-face meeting through their attorney. *Derouin*, 254 So. 3d at 602. This included evidence of a telephone conversation in which one of the borrowers instructed the bank to contact her attorney for all future communications. *Id.* The court in that case found that such an instruction was not the same as indicating to the bank that the borrowers were not open to

a face-to-face meeting. *Id.* Similarly in the case before us, there is a genuine question as to whether the February 1, 2014, letter, indicated to Fifth Third that it should no longer have *any* *contact* with Ms. McCord or whether the letter instead requested Fifth Third to contact Ms. McCord *through* her counsel. Presumably, if the latter is true, Fifth Third could then arrange a face-to-face meeting, using Ms. McCord's counsel as a facilitator. Allowing Fifth Third to arrange a face-to-face meeting through Ms. McCord's counsel would permit Ms. McCord to accept or deny the invitation, with clarity. That certainly would have removed the guesswork regarding whether the requirements pursuant to the federal regulations had been met.

¶ 27     In *Jones*, the court concluded that the borrowers' cease-and-desist letter sent *before* the bank-initiated foreclosure proceedings could " 'be interpreted as indicia of an unwillingness to commit to' " a face-to-face meeting. *Jones*, 294 So. 3d at 343. However, that case is distinguishable because the borrowers in that case *undoubtedly* sent a cease-and-desist letter. *Id.* at 342. The borrowers removed the speculation regarding their willingness to meet and requested a complete cessation of communication. In the instant case, as already discussed, there is, at the very least, a genuine dispute between the parties as to whether the February 1, 2014, letter was, in fact, a cease-and-desist letter. The answer to that question is far from evident in the record before us.

¶ 28     In sum, there is clearly an issue of material fact as to the meaning of the February 1, 2014, letter, upon which Fifth Third relies in eschewing the federal requirement of a face-to-face meeting. The differing interpretations of the meaning of that letter are material. Clarification of the February 1, 2014, letter is the single most important fact in the determination of whether Fifth Third was entitled to summary judgment, and that clarification has yet to transpire. Thus, the trial court in this case erred in granting summary judgment in favor of Fifth Third. See *Bank of America, N.A. v. Schroeder*, 2021 IL App (3d) 200339, ¶ 18 (summary judgment should not be granted if the material facts are in dispute or if the material facts are not in dispute but reasonable persons might draw different inferences from the undisputed facts). We therefore vacate the trial court's judgment granting summary judgment, on the sole basis that a genuine issue of material fact exists as to whether the February 1, 2014, letter was a cease-and-desist letter that exempted Fifth Third from the face-to-face meeting requirement. We remand the case to the trial court for further proceedings. As we are vacating a summary judgment order on the basis that a question of material fact exists, we make no judgment as to the merits of the underlying foreclosure action.

¶ 29                                          CONCLUSION

¶ 30     For the foregoing reasons, we vacate the judgment of the circuit court of Cook County, which granted summary judgment in favor of Fifth Third. The case is remanded to the circuit court for further proceedings consistent with this opinion. Because we are vacating the summary judgment order, the order confirming sale cannot stand, and we also vacate the order confirming sale.

¶ 31     Vacated and remanded.