Kenwood Trust & Savings Bank v. Palmer, 209 Ill. App. 370.

---

## Kenwood Trust & Savings Bank, Appellant, v. Blanche S. Palmer and George E. Palmer, Appellees.

### Gen. No. 22,284.

1.   TRUSTS, § 95*—*when trust extends to remainders.*   Where a will devises the legal title or the fee of the testator's real property to a trustee, the trust extends to the remainders.

2.   TRUSTS, § 95*—*when remaindermen's interests are without trust.*   If the title which a trustee takes under a will to real property is less than a fee and the interests of the remaindermen will come into their possession without any positive action of the trustee, after the expiration of the trust, the remaindermen's interests are without the trust.

3.   TRUSTS, § 96*—*what is policy of law as to limitation of trustee's estate.*   The policy of the law is to limit the trustee's estate to such an estate as is necessary to carry out the directions of the creator of the trust.

4.   LIFE ESTATES, § 17*—*when remaindermen not bound by act of life tenant.*   One possessing a life estate in given property may mortgage it, but may not thereby bind the remaindermen.

5.   TRUSTS, § 95*—*when trustee's title limited to life estate.*   Provisions of a will conveying property in trust, *held* to limit the trustee's title to a life estate.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. WILLS, § 234*—*intestacy as to real property.* Under the provisions of a will, testatrix *held* to have died intestate as to certain real property.

7. WILLS, § 234*—*when will construed to include all testator's property.* While a will should always be construed so as to include all of the property of the testator, if its terms will reasonably bear that construction, where the language used does not cover all of the property of the testator, it should not be distorted so as to accomplish that result.

8. TRUSTS, § 95*—*when interest of person after death of cestui que trust not within trust.* Where property is held in trust for the benefit of a person during his life, and it is to go without any action of the trustee after the expiration of the trust upon the death of the *cestui que trust* to another, the interest of the latter in the property is not within the trust.

9. CREDITORS' SUIT, § 9*—*what may be reached by creditor's bill.* The interest of one who takes under a will after the expiration of a trust created thereby and without any action on the part of the trustee is not within the exception contained in chapter 22, sec. 49 (J. & A. ¶ 929), and, as far as that provision is concerned, may be reached by a creditor's bill.

10. EXECUTION, § 8*—*what cannot be sold under.* Neither at common law nor under the Illinois execution statute (J. & A. ¶ 6756), can a contingent remainder be sold under an execution.

11. EXECUTION, § 8*—*what contingent remainders may not be sold under.* The reasons of policy denying execution sales of legal contingent remainders will apply in the case of equitable contingent remainders.

12. CREDITORS' SUIT, § 9*—*when does not lie.* The same reasons of policy which caused the Legislature to deny the sale of contingent interests under execution will restrict a court of equity in proceeding against such an interest by a creditor's bill.

13. CREDITORS' SUIT, § 1*—*when lies.* A creditor's bill lies only where the law's policy is all in favor of the creditor being permitted to obtain satisfaction of his judgment out of the property of the debtor which it is sought to reach, but against which, because of its nature, execution cannot be levied.

14. CREDITORS' SUIT, § 9*—*when unnecessary.* As a contingent interest in land is capable of being subject to sale under an execution, its nature is not such as to require a bill in equity.

15. JUDICIAL SALES, § 2*—*what cannot be subjected to forced sale.* A contingent remainder, though susceptible of transfer by a voluntary assignment in equity or by warranty deed, cannot be subjected to a forced sale.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Kenwood Trust & Savings Bank v. Palmer, 209 Ill. App. 370.

16. JUDGMENT, § 567*—*when judgment against remainderman is prior lien.* A judgment against a contingent remainderman is, if kept alive, a prior lien, on the happening of the contingency, against an attempted voluntary assignment or conveyance of the remainderman's interest.

TAYLOR, P. J., specially concurring.

Appeal from the Circuit Court of Cook county; the Hon. FREDERICK A. SMITH, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1916. Affirmed. Opinion filed January 30, 1918.

HOYNE, O'CONNOR & IRWIN, for appellant.

ALBERT E. LAKE, for appellees.

MR. JUSTICE THOMSON delivered the opinion of the court.

The Kenwood Trust & Savings Bank, appellant, hereinafter referred to as the complainant, being a judgment creditor of Blanche S. Palmer and George E. Palmer, her husband, appellees, hereinafter referred to as the defendants, filed a creditor's bill seeking to reach the interest of the defendant, Blanche S. Palmer, in her grandmother's estate. A demurrer was filed to the bill by the defendants, the trial court sustained the demurrer and entered a decree dismissing the bill for want of equity, from which decree the complainant has appealed to this court.

For the sake of brevity, we will refer to the defendant, Blanche S. Palmer, as the defendant. Her interest, which is sought to be reached by this bill, comes to her through the will of her grandmother, Nancy E. McLean. So far as it is involved in this case, this will, after making certain specific bequests, proceeds as follows:

"All the rest and residue of my estate, both real, personal and mixed, wherever situate, of which I die seized or possessed, I give, devise and bequeath to

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Colin C. McLean  *  *  *  in trust, during the lives of my two daughters, Mrs. Alice D. Smith and Mrs. Elizabeth F. Bigelow  *  *  *  for the purposes following:

"1.   To convert all my real estate except that situated in the City of Chicago, State of Illinois, into money and to invest same  *  *  *.

"2.   To receive the rents, issues and profits of all my real estate.

"3.   To pay over to my daughters  *  *  *  the net income,  *  *  *  this to continue during the lives of my said daughters  *  *  *.

"6.   At the death of the survivor of my two said daughters  *  *  *  this trust shall cease and my entire estate then existing, of every kind and nature, both real and personal and wherever situate, shall be delivered over to my grandchildren then living by right of representation, and to them, their heirs and assigns forever, I give, devise and bequeath it absolutely  *  *  *.

"If the buildings on my Chicago property, or any part thereof, shall be destroyed and the insurance obtained for such loss, together with such personal property as shall then belong to my estate, shall be insufficient to repair the damage or rebuild the buildings so destroyed, I hereby give and devise to my said trustee full power for that purpose, and for that purpose only, to borrow the necessary money and to encumber my real estate by mortgage or otherwise to secure repayment of the same, and, with the insurance money, if there is any, and said personal property and the money so borrowed to rebuild said property, this to be done, however, under the direction of the court having jurisdiction of said trustee."

The bill, after reciting the recovery of a judgment against the defendants by the complainant and the return of the execution issued, wholly unsatisfied, alleges that, under and by the provisions of this will, the defendant has "an equitable estate or right, title or interest in and to" certain described real estate in the City of Chicago and county of Cook.   The bill further alleges that both the daughters of the testatrix are

still living and that the defendant is the daughter of Mrs. Alice D. Smith, one of the two daughters of the testatrix. The bill prays for a decree directing the sale of all the right, title and interest of the defendant in and to the real estate therein described, and that the proceeds of the sale may be applied to the extent necessary to the payment of the amount due upon said judgment. It is urged by the defendant, in support of the contention that the decree should be affirmed, that the defendant's interest in this real estate cannot be reached by a creditor's bill because it is within the exception set forth in section 49, chapter 22 of the Illinois Statutes (J. & A. ¶ 929), which provides that a judgment creditor may reach certain property interests of the judgment debtor, including property held in trust for the latter "except when such trust has in good faith been created by, or the funds so held in trust have proceeded from, some person other than" the judgment debtor himself. The complainant contends, on the other hand, that the interest of the defendant in the property in question is not within the trust created in the will and so not within the exception in our statute and therefore may be reached by a creditor's bill.

In this connection, it is important to determine the nature of the title in the Chicago real estate which this will devises to the trustee, for, if the will has devised the legal title or the fee to this property to the trustee, then, under the decisions of our Supreme Court, the trust extends to the remainders. *Vallette v. Bennett,* 69 Ill. 632; *McFall v. Kirkpatrick,* 236 Ill. 281, 301; *Lord v. Comstock,* 240 Ill. 492. The reason for this is that the fee being in the trustee, the respective interests of the remaindermen can only reach them by means of actual conveyances executed by the trustee, thus involving an active duty by him as to the remaindermen. If, however, the title which the trustee takes under the will is less than a fee, and the

respective interests of the remaindermen will come into their possession without any positive action by the trustee, after the expiration of the trust, the interests of the remaindermen are without the trust.

In studying all the provisions of this will which throw light upon the intent of the testatrix with reference to the estate which she meant to devise to her trustee, as to the Chicago property, we are led to the conclusion that she meant to limit his title to a life estate and that she accomplished that result by the use of the language which she employed in framing this will. The will devises this property to the trustee "in trust during the lives of my two daughters" and later provides that "at the death of the survivor of my two daughters  *  *  *  this trust shall cease." At that time, under the provisions of the will, the remainder in this property will go, not by any action or conveyance by the trustee but by operation of the devise, to the grandchildren then living, for, after providing when the trust shall cease, the will devises the entire estate of the testatrix then existing to the grandchildren then living by right of representation, the words of the testatrix being, "to them, their heirs and assigns forever, I give, devise and bequeath it absolutely," each grandchild thus taking a legal contingent remainder. The direction of the testatrix in the will to the effect that at the time the trust ceases, the trustee shall "deliver over" the estate then existing, to the grandchildren then living, refers to the possession of the estate. The will does not give the trustee the power to sell this property, but, on the other hand, it expressly states that he may convert all the real estate of the testatrix into money *except* this particular property. The clause in the will giving the trustee power to borrow money and to incumber the real estate of the testatrix by mortgage or otherwise to secure its repayment for the purpose of rebuilding in the event of the destruction of the buildings on the

Chicago property, and for that purpose only, is solely a power and does not enlarge the title of the trustee in the Chicago real estate beyond an estate for the period of the lives of the two daughters of the testatrix. It will be noted that this power to incumber does not specify the incumbrance of the Chicago property. Indeed, under the language of the will, it may well be considered as applying only to the property of the testatrix other than the Chicago property. But, considering it as including the Chicago property, it will further be noted that it is not a general power to mortgage but is limited strictly to the contingency of the damage or destruction of the buildings on the Chicago property, and not even then is the trustee given power to incumber the real estate of the testatrix unless at that time the insurance and the personalty in his hands belonging to the estate proves insufficient to restore the Chicago property. The power to mortgage is expressly limited in these respects and, if it is ever exercised, it will be for the purpose of conserving the Chicago property, and there is no idea of incumbering to raise money for general purposes. It is the policy of the law to limit the estate of a trustee to such an estate as is necessary to carry out the directions of the creator of the trust. 1 Perry on Trusts (5th Ed.), sec. 317; *Walton v. Follansbee,* 131 Ill. 147. So far as it may be said to affect the Chicago real estate, the power granted to the trustee by the testatrix "to incumber my real estate by mortgage or otherwise" may be carried out by the trustee, should the necessity arise if the estate which he holds in the Chicago property is one merely for the lives of the two daughters of the testatrix as plainly specified by the will. One who possesses a life estate in given property may mortgage it but may not thereby bind the remaindermen. Jones on Mortgages, secs. 136, 137; *Mixter v. Woodcock,* 154 Mass. 535; *McDonald v. Woodward,* 58 S. C. 554; *New South Building & Loan Ass'n v. Gann,* 101 Ga. 678.

It may be asked, Where is the title to this property in fee at the present time? It seems clear that, under the provisions of this will, the testatrix died intestate as to the fee of the Chicago real estate and, upon her death, it passed by operation of law to her heirs. *Bond v. Moore,* 236 Ill. 576. While it is true a will should always be construed so as to include all the property of the testator if its terms will reasonably bear that construction, where the language used does not cover all the property of the testator, it should not be distorted so as to accomplish that result. This will makes no provision whatever for the contingency that would arise if none of the grandchildren of the testatrix should survive her two daughters. If that contingency should arise, the legal title or the fee to this property would remain in the legal heirs of the testatrix. If, however, under the terms of the will, after the trust has ceased at the expiration of the estate for the lives of the two daughters of the testatrix, grandchildren are living they will take the remainder in fee. As we have said, if that remainder ever vests in the defendant, it will be under the devise in this will. No conveyance by the trustee is called for as he takes merely a life estate under the will.

From what we have said, therefore, it will be seen that the interest of the defendant is without the trust, which applies, under the terms of the will, to the interests of the two daughters of the testatrix but not to the interest of any of the grandchildren. The trustee does not hold the contingent remainder of this property in trust for the defendant. He merely holds a life estate in that property in trust for the two daughters. Where property is held in trust for the benefit of some person during the life of such person, and it is to go without any action of the trustee after the expiration of the trust upon the death of the *cestui que trust,* to another, the interest of the latter in the property in question is not within the trust. *Bergmann v. Lord,* 194 N. Y. 70, 86 N. E. 828. Such is the interest of the

judgment debtor here. Not being within the trust it is not within the exception set forth in section 49, ch. 22 (J. & A. ¶ 929) of our statutes and therefore, so far as that exception is concerned, may be reached by a creditor's bill. But that does not determine the issue involved in this case.

The real question at issue here is, can a contingent remainder belonging to a judgment debtor be reached by a judgment creditor by means of a creditor's bill, under our statute, and thus be subjected to a sale to satisfy the judgment? It seems to be settled by repeated decisions of our Supreme Court that in Illinois a contingent remainder cannot be sold under an execution. *Haward v. Peavey*, 128 Ill. 430, 442; *Ducker v. Burnham*, 146 Ill. 9, 17; *Aetna Life Ins. Co. v. Hoppin*, 249 Ill. 406, 415; *Hull v. Ensinger*, 257 Ill. 160, 166.

This was the rule at common law. 2 Freeman on Judgments (4th Ed.), sec. 354. The decisions above referred to hold that our statute (J. & A. ¶ 6756), defining what estates may be sold under execution, has not altered the common law so far as contingent remainders are concerned. The reason for the common-law rule is indicated in the fact that at common law even a court of equity would not recognize the validity of conveyances of future interests, whether vested or contingent, unless the consideration given was full value or a fair market value of the future interests.

In the earlier English cases, these conveyances were looked upon with disfavor. The presumption was against their validity and the burden of proof to establish them was placed upon him who sought to enforce the contract. *Davis v. Duke of Marlborough*, 2 Swan. 108, 139. The courts then held that in order to establish the validity of such conveyances it must be shown that the consideration was full and adequate. *Gowland v. De Faria*, 17 Ves. Jr. 20. Some of the later decisions supported the conveyances if a fair market price could be shown. *Edwards v. Burt*, 2 De G. M. & G. 55.

Finally, however, Parliament changed the rule and in the year 1867 an act was passed "to amend the law as administered in the Courts of Equity with respect to the sale of reversions" (31 Vic. ch. 4), in which it was enacted that "no purchase made *bona fide* and without fraud and unfair dealing of any reversionary interest in real or personal estate shall hereafter be opened or set aside merely on the ground of under-value." .

Thus it seems to have been the policy of the common law to look with disfavor on transfers of future interests because of the great danger of the reversioner parting with his estate for an inadequate consideration. The reason why such an interest could not be subjected to sale under execution at common law apparently was based on the idea that if such an estate could be so subjected to sale, the judgment creditor might bid in the estate for a small sum (certainly he could do so if the future interest were contingent because no one would be likely to bid against him), and thereby secure a future estate which would ripen into his possession in the event of the happening of the contingency, and he would still have his judgment, and by keeping it alive he might ultimately realize upon the deficiency. In construing our statute on executions, our Supreme Court has laid down the rule that this policy of the common law must control the construction of the statute until the Legislature shall have explicitly permitted execution sales of legal contingent interests. The same reasons of policy which have caused the court to construe the execution statute as not permitting execution sales of legal contingent remainders would apply in the case of equitable contingent remainders.

The reasons of policy regarded as sufficient by the Legislature for denying the sale of contingent interests under execution, as the Supreme Court has construed our statute, are quite as potent to restrict a

Court of Equity in proceeding against such an interest by creditor's bill.

A creditor's bill only lies where the policy of the law is all in favor of the creditor being permitted to obtain satisfaction of his judgment out of the property of the debtor, which is thus sought to be reached, but where, because of the nature of the property, execution cannot be levied. In such cases, the remedy at law is defective *by reason of the nature of the property* and for that reason equity will supply it. But the nature of a contingent interest in land is not such as to require a bill in equity. It is capable of being subject to sale under an execution and there is no difficulty in reaching it in that way by reason of the nature of the property.

It has further been held in Illinois that a Court of Equity has no jurisdiction to order the sale of a contingent remainder in a suit for partition. *Hill v. Hill,* 264 Ill. 219, 228.

Although it has been held that the owner of such an interest may voluntarily assign it in equity, or transfer it by warranty deed, in which case the transfer will be upheld on the theory of estoppel, it is apparently the fixed policy of the law in this State that a contingent remainder may not be subjected to a forced sale.

Appellant, in contending the contrary, relies upon a number of decisions to that effect, notably, *Alexander v. McPeck,* 189 Mass. 34; *Putnam v. Story,* 132 Mass. 205; *Daniels v. Eldredge,* 125 Mass. 356; *Clarke v. Fay,* 205 Mass. 228, 91 N. E. 328. An examination of the statutes of Massachusetts discloses the fact that the broad policy of the law there with reference to contingent interests is quite at variance with ours. The statute of that State, which was involved in *Clarke v. Fay,* permits "suits by creditors to reach and apply in payment of a debt any property, right, title or interest, legal or equitable, of the debtor * * * which cannot be reached to be attached or taken on

execution in an action at law, although &ast; &ast; &ast; the property sought to be reached and applied &ast; &ast; &ast; cannot be reached and applied until a future time or is of uncertain value &ast; &ast; &ast;." The execution statute of that State subjects to levy "all the land of the debtor in possession, remainder or reversion &ast; &ast; &ast;."

The policy of the law, as our Supreme Court has thus established it in Illinois, works no hardship on the judgment creditor. If he could reach a contingent remainder, either under execution or by a creditor's bill, and a sale of it was compelled and he was permitted to buy it in, he would take nothing if the contingency never happened and the estate never vested in possession. On the other hand, if the contingency ever does happen, and the estate does vest in possession of the contingent remainderman, the judgment creditor can secure all he is entitled to, namely, the face of the judgment with interest and costs. This he is sure to receive on the happening of the contingency if he merely keeps his judgment alive, for it will be a prior lien against an attempted voluntary assignment or conveyance.

There being no error in the record, the decree is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE TAYLOR specially concurring.

I do not agree with all the reasoning of the foregoing opinion, but I concur in the result.