NOTICE

Decision filed 04/30/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250622

NO. 5-25-0622

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| ASSOCIATED BANK, NATIONAL ASSOCIATION, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | St. Clair County. |
| v. | ) ) | No. 23-FC-394 |
| JOHN MORRISON; BETTY ROSE MORRISON; RONNIE CLYBURN; WANDA CONYERS, a/k/a Wanda McShan; YVONNE M. MATTHEWS, a/k/a Yvonne McShan; BRENDA McSHAN; UNKNOWN HEIRS AND DEVISEES OF FREDDIE L. McSHAN, Deceased; UNKNOWN CLAIMANTS AND LIENHOLDERS AGAINST THE ESTATE OF FREDDIE L. McSHAN, Deceased; UNKNOWN CLAIMANTS AND LIENHOLDERS AGAINST THE UNKNOWN HEIRS AND DEVISEES OF FREDDIE L. McSHAN, Deceased; UNKNOWN HEIRS AND DEVISEES OF OZELL McSHAN, Deceased; UNKNOWN CLAIMANTS AND LIENHOLDERS AGAINST THE ESTATE OF OZELL McSHAN, Deceased; UNKNOWN CLAIMANTS AND LIENHOLDERS AGAINST THE UNKNOWN HEIRS AND DEVISEES OF OZZELL McSHAN, Deceased; CAROLYN McSHAN; CITIFINANCIAL SERVICES, INC., Successor by Merger to Associates Finance, Inc.; and UNKNOWN OWNERS AND NONRECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | Honorable Stacy L. Campbell, |
| (John Morrison, Defendant-Appellant). | ) | Judge, presiding. |

_____

JUSTICE BOLLINGER delivered the judgment of the court, with opinion.
Justices McHaney and Sholar concurred in the judgment and opinion.

1

**OPINION**

¶ 1    Plaintiff Associated Bank, National Association (Associated), initiated legal proceedings seeking to foreclose and reform a mortgage concerning residential property situated at 4915 Tudor Avenue, East St. Louis, Illinois (the property). Defendant John Morrison (John) was named as one of the defendants. The mortgagor was Rosa M. McShan (McShan), who passed away prior to the commencement of this action. Several years prior to her death, McShan executed and recorded a quitclaim deed (deed) transferring the property to John and his siblings (defendants) as tenants in common. John filed an answer, affirmative defenses, and a counterclaim, asserting that the mortgage should have been discharged upon McShan's death because she merely reserved a life estate and that he and his co-tenants in common held clear and marketable title to the property, free from the mortgage. Furthermore, John contended that the conduct of Associated subsequent to McShan's death constituted fraudulent and deceptive practices under the Consumer Fraud and Deceptive Business Practices Act (Act or Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2022)). John sought an order discharging the mortgage and for damages on his counterclaim. The parties filed cross-motions for summary judgment. The circuit court granted Associated's motion and denied John's motion. The circuit court found that the deed was testamentary in nature and that John did not bring forth sufficient facts in support of his counterclaim. This appeal followed, and for the reasons set forth herein, the judgment is affirmed in part, reversed in part, and vacated in part.

¶ 2                                I. BACKGROUND

¶ 3    On October 4, 2023, Associated filed a complaint for foreclosure against multiple defendants, including John, Betty Rose Morrison, and Ronnie Clyburn (collectively, defendants), concerning a mortgage executed on June 13, 2007, for a residence located at the property. The

2

complaint alleged that a mortgage payment was not made on April 13, 2023, and that the total amount due, with interest, was $58,262.96. It further alleged that defendants owned the property, as they each held an undivided one-third interest as tenants in common.

¶ 4    Attached to the complaint were various documents, including a construction loan mortgage dated June 13, 2007, pertaining to the property between McShan and Associated for the amount of $73,151. Attached to the mortgage was a legal description of the property, which included the following after the parcel number: "JOHN MORRISON, BETTY ROSE MORRISON AND RONNIE CLYBURN, AS TENANTS IN COMMON." The mortgage and the associated note were signed by McShan.

¶ 5    On March 15, 2024, after obtaining leave from the circuit court, Associated filed an amended complaint, adding additional interested parties as defendants. Subsequently, on June 5, 2024, following the proper service of process, Associated filed a motion for judgment of foreclosure and sale, a motion for default as to the named defendants, and a motion to reform the mortgage to correct the legal description, more specifically the permanent index number, of the property. On June 24, 2024, counsel entered their appearance on behalf of John and filed a motion to continue the hearing concerning the motions for default and for judgment of foreclosure and sale. The circuit court granted John's motion for a continuance and directed him to file a responsive pleading.

¶ 6    On August 7, 2024, John filed an answer to the amended complaint, along with affirmative defenses and a counterclaim. Concerning his first affirmative defense, John contended that Associated's mortgage interest was extinguished upon the death of McShan. He alleged that on September 19, 1995, McShan transferred her interest in the property to defendants as tenants in common, while reserving an estate for and during her natural life (life estate). A copy of the

3

recorded deed was attached as an exhibit. The deed provided that McShan did "convey and quitclaim to John Morrison, Betty Rose Morrison and Ronnie Clyburn, as tenants in common, all interest in the property as legally described therein." Furthermore, the deed included the following provision: "*Reserving unto the Grantor an estate for and during the term of her natural life whereby Grantor shall have the full use and control thereof during her natural life." The deed was recorded on September 19, 1995.

¶ 7　The first affirmative defense further claimed that, nearly 12 years later, the mortgage in question was established and recorded. John contended that, at the time the mortgage was issued by Associated, defendants possessed a vested fee simple remainder interest in the property. Furthermore, John asserted that none of the defendants consented to the mortgage or note and that McShan could mortgage only her life estate interest in the property. It was alleged that the mortgage constituted a lien solely on McShan's life estate and did not serve to secure anything on the fee simple estate in the property. Consequently, John argued, the mortgage should have been discharged upon McShan's death, thereby rendering the property free and clear of the mortgage for himself and his siblings. He requested an order discharging the mortgage and note.

¶ 8　John further asserted a combined second affirmative defense and counterclaim pursuant to the Act. He reasserted the allegations contained in his first affirmative defense and additionally alleged that McShan was the mother of defendants and that he was residing at the property with McShan, assisting her with expenses, including making payments on the mortgage. John stated that after McShan's passing, he informed a bank teller of this fact when making a mortgage payment. He argued that employees of Associated would not provide updates or information regarding the mortgage and continued to accept his mortgage payments from November 2018 to May 2023. It was further alleged that, around May and June 2023, John received letters addressed

to McShan indicating that the mortgage was in default. It was also alleged that Associated began to refuse to accept payments around June 2023. John claimed that Associated accepted nearly five years of payments, fully aware that McShan had already passed away, on a mortgage that should have been discharged. He maintained that such conduct constituted a deceptive business practice under the Act and that he suffered damages estimated at $30,562.78. Additionally, John sought an award of punitive damages and attorney fees, as well as an order discharging the mortgage and note. Associated responded by filing an answer to the affirmative defenses and counterclaim.

¶ 9    On December 4, 2024, Associated filed a motion for summary judgment (735 ILCS 5/2-1005 (West 2022)) accompanied by an affidavit in support. Associated argued that John's response did not establish a genuine issue of material fact that would prevent the granting of summary judgment on its complaint, as it was undisputed that the mortgage and note were in default. Additionally, Associated challenged John's interpretation of the deed, asserting that it did not create a life estate in McShan but rather constituted a transfer-on-death instrument. Associated highlighted that the deed explicitly granted McShan "full" use and control of the property and noted that her actions—specifically applying for a mortgage without defendants' permission— were indicative of her intent. Furthermore, Associated pointed out McShan's statement to the bank at the time of the mortgage application, in which she claimed she alone held title to the property, citing a "Fact Borrower Agreement" attached to the affidavit supporting the motion. Associated also maintained that John failed to present facts demonstrating that it engaged in deceptive conduct and that he willingly made loan payments. Associated sought the relief as outlined in its complaint.

¶ 10    On December 6, 2024, John filed a motion for summary judgment accompanied by a supporting memorandum of law and his affidavit. The motion primarily reiterated the allegations contained within his affirmative defenses and counterclaim. In his affidavit, John affirmed that

5

McShan obtained a mortgage on the property without his knowledge or consent or that of his siblings. He explicitly denied signing any documents related to the mortgage or note. He further stated that he was informed of the monthly payments during McShan's lifetime, as he drove her to Associated in Belleville to make the payments. Following McShan's death, John continued to make payments on the mortgage; however, the tellers refused to provide him with information about it because he was not listed on it. He claimed to have paid at least $31,120.01 toward the mortgage, believing this was necessary to retain ownership of the property. Additionally, he received default statements mailed to the property in his mother's name. John also submitted discovery documents supporting his motion, showing that around June 28, 2007, Associated paid for a title examination and held a telephone meeting with the title company regarding the mortgage. He referenced the property description attached to the mortgage, which identified himself and his siblings as tenants in common of the property. John argued that there was no genuine issue of material fact that would preclude summary judgment in his favor and requested the relief specified in his counterclaim.

¶ 11    John also filed a reply to Associated's motion for summary judgment, reiterating his arguments in support of his motion and his interpretation of the deed. Associated subsequently filed a response to John's motion, reaffirming its arguments in support of its own motion and interpretation of the deed.

¶ 12    On February 20, 2025, the circuit court heard arguments concerning both motions for summary judgment and took the matter under advisement, issuing a written order on March 13, 2025. In that order, the circuit court determined that the deed indicated McShan's intention to retain "full use and control" of the property during her lifetime. By reserving complete dominion over the property, the circuit court found this to be inconsistent with an intent to convey a present

6

interest or a life estate. The circuit court observed that the language within the deed suggested that the transfer was to occur upon McShan's death, thereby establishing a testamentary deed. Furthermore, the circuit court noted that McShan's actions and omissions supported this interpretation, as she did not seek permission from defendants prior to obtaining the mortgage nor did she disclose her life estate when applying for the mortgage. These actions reflected her intent to retain full control of the property until her death, reinforcing the conclusion that the deed conveyed title only upon her death. The circuit court concluded that the deed was a testamentary instrument and did not convey a life estate to McShan.

¶ 13    With regard to John's claim under the Act, the circuit court determined that the claim was untenable for multiple reasons. First, John was not a party to the mortgage and did not qualify as a consumer protected by the Act. Second, the statements and notices issued by Associated were directed exclusively to McShan, and John was under no legal obligation to respond or act upon them. Third, John voluntarily made payments towards the mortgage, notwithstanding that he had neither a contractual nor a legal obligation to do so. The circuit court emphasized that Associated neither requested nor required John to make such payments. Furthermore, the circuit court found no evidence indicating that Associated intended for John to rely on the statements sent or accept payments in a manner that could constitute a deceptive practice under the Act. The circuit court concluded that John's actions were entirely voluntary and, therefore, Associated did not commit any deceptive act nor did it intend for John to rely on any alleged fraudulent or deceptive practice. Based on these findings, the circuit court granted Associated's motion for summary judgment and denied John's motion.

¶ 14    On March 20, 2025, the circuit court issued a judgment of foreclosure and approved the sale of the property. Additionally, it granted Associated's motion to reform the mortgage to correct

7

the legal description. The circuit court also issued a subsequent order finding the other defendants in default.

¶ 15    On April 30, 2025, the circuit court issued additional rulings in favor of Associated by granting the motion to correct the judgment of foreclosure and sale, while denying John's motion for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). Subsequently, a notice and certificate of sale were filed, indicating that the property was acquired by the highest bidder on June 23, 2025. On July 24, 2025, the circuit court granted Associated's motion to confirm the sale. On August 1, 2025, John filed a motion to stay the order confirming the sale and the judgment of foreclosure, and a notice of appeal. Subsequently, on August 8, 2025, the circuit court granted John's motion for a stay, subject to certain conditions outlined in a written order.

¶ 16                                 II. ANALYSIS

¶ 17    On appeal, John contends that the deed conferred a vested remainder interest in fee simple upon defendants and reserved a life estate to McShan. He asserts that McShan was authorized to encumber her life estate with a mortgage but was not permitted to attach the mortgage to defendants' remainder fee simple interest. John emphasizes that, in interpreting a deed, the court's objective is to ascertain the grantor's intent and to give it effect, evaluating the document in its entirety. Furthermore, he indicates that, in the absence of ambiguity, the parties' intent must be determined solely from the nature of the deed, without regard to extrinsic factors. He maintains that the conveyance language contained within the deed "is not equivocal or contingent," that the deed is unambiguous when considered in its entirety, and that McShan's intention at the time of execution is the most significant factor to be considered.

¶ 18    John further contends that McShan reserved for herself the authority to dispose of her life estate interest as she deemed fit, but not to dispose of the fee estate vested in defendants. He asserts

8

that Associated's reliance on extrinsic evidence to overcome the presumption that title vested immediately in September 1995 in defendants was error, as there was no ambiguity in the deed.

¶ 19    John asserts that the deed does not qualify as a testamentary deed due to its irrevocable nature, as McShan lacked the unilateral authority to revoke it. He further argues that it was improper to consider the encumbrance of her life estate by the mortgage, as this would impose intent retroactively. He asserts that there was no evidence regarding McShan's intent, and, considering that the four corners of the deed are clear and unambiguous, none was required.

¶ 20    John further contends that the circuit court erred in denying his motion for summary judgment as to his claim under the Act. He maintains that being a consumer is not a prerequisite to asserting a claim under the Act and affirms that he has satisfied all requisite elements for such a claim. He urges us to reverse the circuit court's grant of summary judgment in favor of Associated and to hold, as a matter of law, that the deed transferred title immediately to defendants in fee simple as tenants in common, while reserving a life estate to McShan. Additionally, he requests that we determine that the mortgage was solely attached to McShan's life interest and should have been extinguished upon her death. Furthermore, he asks that the judgment of foreclosure and all related subsequent orders be reversed and vacated. Lastly, he requests that we reverse the summary judgment order in favor of Associated concerning the claim under the Act and remand the matter for further proceedings.

¶ 21    In response, Associated contends that the language within the deed was unambiguous and affirms that the circuit court was correct in its determination that the deed did not establish a life estate in McShan. It argues that the transfer of title via the deed occurred solely upon McShan's death, as she explicitly expressed her intention to retain "full use and control" of the property during her lifetime. When interpreting the grantor's intent, Associated maintains that a court is not

9

limited to a strict, literal interpretation of the language employed; surrounding circumstances may also be considered. Furthermore, Associated asserts that when McShan applied for the mortgage, she represented that she was the sole owner of the property and did not seek defendants' prior permission. Additionally, Associated claims that the deed was testamentary in nature, as she "retained unlimited power with respect to the property and intended the property would be delivered to the grantee only at her death."

¶ 22    Associated further argues that we do not have jurisdiction to consider the circuit court's ruling on the claim under the Act as neither the notice of appeal nor the docketing statement indicates that John intended to appeal this issue. Associated further contends that if we find we have jurisdiction, the circuit court was correct in granting summary judgment. Associated asserts that John cannot satisfy the elements necessary for a successful claim under the Act and requests that we affirm the circuit court's judgment.

¶ 23    Summary judgment should be granted if the pleadings, depositions, and admissions on file, together with any affidavits, establish that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2022). Summary judgment is intended to determine whether triable issues of fact exist and "is appropriate where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Busch v. Graphic Color Corp.*, 169 Ill. 2d 325, 333 (1996). "Since the entry of a summary judgment is not a matter committed to the discretion of the trial court, a reviewing court must independently examine the evidence presented in support of and in opposition to a motion for summary judgment [citation] and review the

10

decision of the trial court *de novo*." *Groce v. South Chicago Community Hospital*, 282 Ill. App. 3d 1004, 1006 (1996).

¶ 24    The Illinois Supreme Court has long recognized that the granting of summary judgment is a drastic method of disposing of a case that should not be employed unless there is no genuine issue of material fact and it is free from doubt that the movant is entitled to judgment as a matter of law. *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986). Nevertheless, our supreme court has also acknowledged that summary judgment

> "is an important tool in the administration of justice, that its use in a proper case is to be encouraged and that its benefits inure not only to the litigants, in saving of time and expenses, but to the community in avoiding congestion of trial calendars and the expenses of unnecessary trials." *Fooden v. Board of Governors of State Colleges & Universities of Illinois*, 48 Ill. 2d 580, 586 (1971).

¶ 25    "The trial court's summary judgment may be affirmed on any basis appearing in the record whether or not the court relied on that basis or its reasoning was correct." *Ray Dancer, Inc. v. DMC Corp.*, 230 Ill. App. 3d 40, 50 (1992). The trial court strictly construes the pleadings, depositions, admissions, and affidavits against the movant and liberally construes them in favor of the nonmoving party when determining whether a genuine issue of material fact exists. *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. "The nonmoving party may defeat a claim for summary judgment by demonstrating that a question of material fact exists." *Id.*

¶ 26                    A. Construction of the Deed

¶ 27    The Illinois Mortgage Foreclosure Law (Foreclosure Law) (735 ILCS 5/art. XV (West 2022)) delineates the sole procedure for effectuating a mortgage foreclosure within the State of Illinois. "Under the Foreclosure law, a mortgage foreclosure action may be filed by a mortgagee

11

or by an agent or successor of a mortgagee." *Bank of America, N.A. v. Schroeder*, 2021 IL App (3d) 200339, ¶ 23. "A plaintiff may establish a *prima facie* case for mortgage foreclosure by filing a complaint that complies with the pleading requirements of section 15-1504(a) of the Foreclosure Law [(735 ILCS 5/15-1504(a) (West 2008))]." *Id.* "Once the plaintiff has established a *prima facie* case for foreclosure, the burden shifts to the defendant to prove any affirmative defenses that the defendant has raised ***." *Id.*

¶ 28   Here, John raised an affirmative defense that the deed in question was not testamentary; rather, it vested immediate title to him and his siblings. "An affirmative defense basically confesses the plaintiff's case but asserts a new matter that avoids liability." *Triple R Development, LLC v. Golfview Apartments I, L.P.*, 2012 IL App (4th) 100956, ¶ 16. "The only contested issue is the affirmative defense; the elements of the cause of action are no longer contested." *Id.* The burden of proof shifts to the party opposing a motion for summary judgment. *Id.* " 'While parties opposing a summary judgment motion are not required to prove their case, they are under a duty to present a factual basis which would arguably entitle them to judgment in their favor, based on the applicable law.' " (Internal quotation marks omitted.) *Willett v. Cessna Aircraft Co.*, 366 Ill. App. 3d 360, 369 (2006) (quoting *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 615 (1995)).

¶ 29   John's first affirmative defense asserts that McShan's intent when drafting the deed was to transfer an immediate interest in the property to defendants while reserving a life estate and, consequently, that Associated's mortgage interest was extinguished upon her death. Based on this affirmative defense, the burden of proof was on John to introduce "competent evidence that, if uncontradicted, entitles him *** to judgment as a matter of law." *Id.* In support of this defense raised in his motion for summary judgment, he relied on the deed as well as his affidavit. In his

affidavit, John states that his mother executed the deed in 1995 and that he moved in with her in 2018. He further attests that his mother obtained the loan and mortgage in 2007, of which he was unaware, and that he did not sign any documents related thereto.

¶ 30    The deed in question states that McShan transferred and quitclaimed the property to defendants as tenants in common. Following the typed legal description of the property, there is a paragraph that begins with a star, and reads:

"Reserving unto the Grantor an estate for and during the term of her natural life whereby Grantor shall have the full use and control thereof during her natural life."

¶ 31    "It is well established that in construing a deed the overriding concern is to ascertain and give effect to the intention of the parties." *Estate of Jezewski v. Jaworski*, 2019 IL App (1st) 170100, ¶ 16. "The deed should be construed so as to carry out this intention, as gathered from the instrument as a whole, and every word in the deed should be considered and, if possible, given effect." *Id.* "Absent an ambiguity in the deed, the intention of the parties must be discerned solely from the language of the instrument, without consideration of extrinsic factors." *Id.* ¶ 17. In this context, both parties contend on appeal that the language in the deed is unambiguous, each asserting a different interpretation. Associated asserts that the deed was testamentary, whereas John contends that McShan and defendants held the property concurrently, with McShan reserving a life estate and defendants owning a fee simple interest as tenants in common. Both parties cited case law to support their respective interpretations of the deed to determine McShan's intent. The circuit court, in finding that the deed was testamentary, relied on *Steinke v. Sztanka*, 364 Ill. 334 (1936).

¶ 32    In *Steinke*, the appellants appealed

"from a decree of the circuit court of Cook county setting aside, as a cloud on the title to certain real estate, a warranty deed and declaring a note for $500, and a trust deed to secure said note, void, as an ineffectual attempt to make a testamentary disposition of property." *Id.* at 335.

The specific language in that deed is not set forth in the opinion. Of significance, unlike this case, the court heard evidence bearing on the grantor's intent in executing the deed. *Id.* at 335-38. The court ultimately found that the

"deed, trust deeds and notes were not intended by [the grantor] to be absolute dispositions of her property, but were intended to be, and were, executed by her as a testamentary disposition of her real estate and money, which she intended to be ambulatory and not effective until her death; that they were not properly executed as a testamentary disposition of her property, and were therefore void and should be set aside." *Id.* at 338.

The Illinois Supreme Court first noted that the "chancellor saw and heard the witnesses testify and was in a much better position to judge their credibility than are we. Under such conditions this court will not disturb the findings of the chancellor unless it is apparent that a clear and palpable error has been committed." *Id.* at 339. Based on the evidence of record considered in that light, the supreme court affirmed the chancellor's decree. In stark contrast, here, no testimonial evidence was presented as to McShan's actions or intent surrounding the execution of the deed other than the deed itself. Therefore, we do not find *Steinke* supportive of Associated's interpretation of the deed in this case.

¶ 33    John cites various case authorities in support of his argument. He cites *Walker v. Sturgis*, 47 Ill. App. 2d 251 (1964), to support his contention that the phrase "during her natural life" used by McShan in the deed created a life estate. While the clause at issue in *Walker* also employed the

language " 'during her natural life,' " *Walker* also supports the proposition that the entire clause creating the life estate must be interpreted in light of the other language within the same clause, such as " 'for her comfort and support' " as used in that case. *Id.* at 252, 254-55. In this instance, although the clause in question includes the phrase "during her natural life," it must be interpreted in conjunction with the entire clause, including the phrase "full use and control." Although the language establishing the life estate in *Walker* differs in certain terminology from the clause under consideration, they both utilized "during her natural life," and we find *Walker* supportive of John's argument that McShan's intention was to establish a life estate.

¶ 34     John also relies on *Chicago, Peoria & St. Louis Ry. Co. v. Vaughn*, 206 Ill. 234 (1903), to support the proposition that the clause in question conveyed the subject property to defendants subject to a life estate in McShan. While portions of the clause at issue in *Vaughn* were somewhat different from the one in the present case, as the life estate clause employed the words " 'sole control, use and occupation of the above described premises, and all the rents and profits thereof,' " it concluded with " 'during the term of his natural life.' " *Id.* at 238-39. The supreme court stated, "Unquestionably, after the execution and delivery of this deed Josiah Vaughn had only a life estate in the property thereby conveyed, and his two sons, Charles A. Vaughn, and the appellee, Edward J. Vaughn, owned the remainder subject to the life estate." *Id.* at 239. In other words, there was no dispute that the language herein described sufficiently created a life estate. In fact, the primary issue in *Vaughn* was whether a railroad company could continue occupying the land after the termination of the life estate, rather than whether the language used even created a life estate. As such, we find that *Vaughn* supports John's interpretation of the deed, given that McShan employed the phrases "during the term of her natural life" and "during her natural life," which adequately established a life estate in herself.

15

¶ 35    Having accepted John's construction of the deed, we consider whether McShan had the power to encumber her life estate with a mortgage. To that end, we find *Frank v. Frank*, 305 Ill. 181 (1922), instructive. In that case, the grantors executed a warranty deed to their children, subject to a life estate in the grantor/wife, which read:

> " 'Saving and expressly reserving from the operation of the above conveyance an estate in favor of said [wife] for the term of her natural life, full power and authority being hereby reserved in said [wife] to sell, convey, mortgage or lease said premises or any part thereof, it being the intention hereof that said [wife] shall have full and absolute control of said premises during her lifetime, and may sell or dispose of the same, renew existing incumbrances thereon or make other loans and secure the same by mortgage thereon, all at her pleasure and without the necessity of any of the grantees above named joining in any deed, mortgage or lease.' " *Id.* at 182.

Following the death of her husband, the wife executed a warranty deed transferring the same property to four of the five children specified in the original deed. *Id.* One of the issues on appeal concerned the extent of the wife's authority to dispose of her life estate. The Illinois Supreme Court held that the powers granted in a deed may be either limited or general. *Id.* at 184. A limited power is defined as one that can only be exercised under specific circumstances or for certain individuals. *Id.*

> "General powers authorize the donee thereof to create any estate which the donor of the power could have created. He may give the fee to whomsoever he pleases, for whatever purpose suits him, and make anyone, including himself, the beneficiary of the appointment. A general power is, in effect, a limitation in fee *though it does not have the effect to raise a life estate to a fee*." (Emphasis added.) *Id.*

16

The court stated that the power granted is to be determined from the language used and "is regarded as pertaining only to the estate devised, and is interpreted as meaning such a disposal as a tenant for life could make unless the language of the instrument conferring the power expressly gives a general power to dispose of the fee." *Id.* at 185. The court found that while the wife had the express power to sell the property, "there is nothing in the language creating the power which indicates that she is to have the right to dispose of the proceeds without regard to the rights of the remainder-men." *Id.* at 187. The court also stated that "[t]he rule is that a deed which purports to convey a greater estate than the grantor has is void only as to the excess but is operative to pass the estate which the grantor has." *Id.*

¶ 36    We find *Frank* helpful in determining what rights McShan had with regard to her life estate. Because she had "full use and control," she expressly had the right to use it and control it as she deemed fit, including encumbering the property with a mortgage.

¶ 37    However, *Frank* also makes clear that the mortgage was limited to McShan's life estate interests and could not affect the rights of the remaindermen, *i.e.*, defendants. This is further supported by the holding in *Kenwood Trust & Savings Bank v. Palmer*, 209 Ill. App. 370 (1918), which discussed a suit brought by a bank against the remainderman of a life estate. The appellate court stated that "[o]ne who possesses a life estate in given property may mortgage it but may not thereby bind the remaindermen." *Id.* at 376. In line with both *Frank* and *Palmer*, we hold that McShan had the authority to secure a mortgage on her life estate interest; however, the mortgage at issue did not bind defendants as remaindermen.

¶ 38    As the deed is unambiguous and McShan's intent can be ascertained from the deed itself, in accordance with the foregoing case authorities, there was no need for the circuit court to consider extrinsic evidence to ascertain McShan's intent. After deeding the property to defendants as

17

tenants in common, the language employed by McShan—namely, "for and during the term of her natural life," "full use and control," and "during her natural life"—clearly indicates her intention to reserve a life estate unto herself. The scope of the powers associated with her life estate was broad, allowing her to act as she wished, but solely with respect to her own life estate. She could not encumber defendants' interest. Consequently, upon her death, the life estate terminated, and the mortgage ceased to be effective. Essentially, there exists no genuine issue of material fact that McShan acquired a note and mortgage on her life interest in the property and that when she subsequently died, so did the mortgage. Therefore, we reverse the circuit court's decision that granted summary judgment in favor of Associated concerning the foreclosure issue and reverse the denial of John's motion for summary judgment regarding his first affirmative defense.

¶ 39                                    B. The Act

¶ 40     John next argues that the circuit court improperly denied his motion for summary judgment on his counterclaim pursuant to the Act. He maintains that it is unnecessary to be a consumer in order to assert a claim under the Act and alleges that Associated engaged in deceptive and unfair conduct. John contends that Associated engaged in deceptive conduct because it ought to have been aware that the mortgage was nullified upon the death of McShan and that defendants were the rightful owners of the property. Furthermore, he contends that Associated acted deceptively by failing to furnish information to John subsequent to the death of his mother. He further asserts that Associated was aware that John held an interest in the property and, consequently, should have afforded him the opportunity to assume the loan, citing Regulation X (12 C.F.R. § 1024.38(b)(1)(vi)(A) (2020)). John argues that the circuit court erred in granting summary judgment on the matter of the Act violation, as it misapplied the law by concluding that John's payments were voluntary.

18

¶ 41 Before addressing John's assertions concerning the claim under the Act, we will first evaluate Associated's claim that we lack jurisdiction on this issue, referencing John's specific notice of appeal, which indicated his intention to reverse the circuit court's judgment regarding whether McShan possessed a life estate, without mentioning the circuit court's ruling on the claim under the Act. " 'A notice of appeal is a procedural device filed with the trial court that, when timely filed, vests jurisdiction in the appellate court in order to permit review of the judgment such that it may be affirmed, reversed or modified.' " *Smith v. American Heartland Insurance Co.*, 2017 IL App (1st) 161144, ¶ 17 (quoting *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011)). Illinois Supreme Court Rule 303(b)(2) (eff. July 1, 2017) provides that the notice of appeal "shall specify the judgment or part thereof or other orders appealed from and the relief sought from the reviewing court." "The notice of appeal informs the prevailing party in the trial court that the other party seeks review of the judgment and is sufficient to confer jurisdiction on an appellate court when it fairly and adequately sets out the judgment complained of and the relief sought." *Smith*, 2017 IL App (1st) 161144, ¶ 17. "[A] notice of appeal should be liberally construed and considered as a whole." *Id.*

¶ 42 The notice of appeal in the present matter specifically delineates the March 20, 2025, order granting Associated's summary judgment motion and denying John's as one of the orders he wanted to appeal. Although the notice of appeal explicitly states that John seeks to "change" the circuit court's finding that McShan did not retain a life estate, we are obliged to consider the notice of appeal liberally. Associated was not prejudiced by John addressing the issue under the Act in his brief since the notice of appeal notified Associated that John was appealing the entire order, as all relevant matters were contained therein. Consequently, the notice of appeal granted us

19

jurisdiction over the order itself, and we do not agree with Associated's assertion that our jurisdiction is confined to the issue of interpretation of the deed.

¶ 43 Associated argues, and the circuit court found, that John cannot sustain a claim under the Act because he was not a consumer. However, "[t]he protections of the statute are not limited to consumers." *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 214 Ill. App. 3d 1073, 1082 (1991). Given the Act "is to be liberally construed to eradicate all forms of unfair or deceptive practices" (see *Bank One Milwaukee v. Sanchez*, 336 Ill. App. 3d 319, 323 (2003)), we disagree with Associated and the circuit court and find that John had standing to assert a claim under the Act.

¶ 44 In order to maintain a cause of action under the Act, a litigant must allege " '(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.' " *Tri-Plex Technical Services, Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 26 (quoting *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002)). The factors used to determine whether conduct is deceptive or unfair under the Act include "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417-18 (2002). " ' "All three criteria do not need to be satisfied to support a finding of unfairness." ' " *Id.* at 418 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 612 A.2d 1130, 1143 (Conn. 1992)). "Courts view the elements of a Consumer Fraud Act claim under an objective standard, measuring the materiality of the consumer's decision by what a reasonable consumer would regard as important in making a decision." *Ash v. PSP Distribution, LLC*, 2023 IL App (1st) 220151, ¶ 31.

20

¶ 45    John contends that Associated engaged in deceptive conduct because it should have been aware that the mortgage was nullified upon the death of McShan and that defendants were the rightful owners of the property. Regarding the construction of the deed, at most, Associated's interpretation was erroneous. The Act prohibits deception, not error. *Stern v. Norwest Mortgage, Inc.*, 284 Ill. App. 3d 506, 513 (1996). Thus, Associated's continued reliance on its interpretation of the deed was not deceptive.

¶ 46    John alleges that Associated engaged in deceptive practices because the tellers refused to furnish any information concerning the mortgage or its balance when he made payments. Nonetheless, the Illinois Banking Act prohibits the disclosure of such personal information unless the customer has explicitly authorized it. See 205 ILCS 5/48.1(c)(1) (West 2022). John has not presented any evidence, including a document, to demonstrate that McShan had authorized the release of such information to him. Consequently, Associated was without the authority to disclose any information regarding the mortgage to John.

¶ 47    John asserts that Associated was deceptive in mailing mortgage payment requests to McShan and/or her estate following her death. However, Associated never sent any payment demand to John or any other defendant. "[W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions." *De Bouse v. Bayer*, 235 Ill. 2d 544, 555 (2009). John acknowledged in his affidavit filed in support of his motion for summary judgment that default notices were mailed to his mother or his mother's estate. "A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication *** from the defendant." *Id.*

21

¶ 48 We observe that John's payments were made voluntarily in response to the aforesaid correspondence. "The common-law voluntary payment doctrine embodies the ancient and 'universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal.' " *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 22 (quoting *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 541 (1908)). The Illinois Supreme Court held in *McIntosh* that the voluntary payment doctrine applied to claims under the Act. *Id.* ¶¶ 30-31. "To avoid application of this long-standing doctrine, it is necessary to show not only that the claim asserted was unlawful but also that the payment was not voluntary, such as where there was some necessity that amounted to compulsion and payment was made under the influence of that compulsion." *Id.* ¶ 23. Here, John has not demonstrated that Associated made any unlawful claim to him requiring repayment of the mortgage. Furthermore, he has not established that his voluntary payments were influenced by compulsion by Associated.

¶ 49 "Illinois courts determine whether conduct is unfair under the Consumer Fraud Act on a case-by-case basis." *Saunders v. Michigan Avenue National Bank*, 278 Ill. App. 3d 307, 313 (1996). Here, when evaluating the conduct alleged to be deceptive by John from the perspective of a reasonable consumer, we conclude that such conduct does not constitute deceptive or unfair practices. Associated relied on its interpretation of the deed in initiating its foreclosure proceedings, and its subsequent actions were based directly on that interpretation. Associated lacked the authority to disclose any information to John, nor did it mail any collection notices to John or his siblings. John voluntarily responded to the mailings that were not addressed to him by making the mortgage payments. In essence, none of the actions complained of by John constitute a deceptive or unfair practice. Consequently, the trial court did not err in denying John's motion

for summary judgment, as he failed to provide evidence to substantiate any deceptive act or practice by Associated.

¶ 50                                    C. Regulation X

¶ 51    John further contends, for the first time on appeal, that Associated violated Regulation X. This assertion was not presented in any of John's pleadings in the circuit court. "Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal." *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15. As a result, we find this argument forfeited on appeal and will not address it.

¶ 52                                   III. CONCLUSION

¶ 53    For the foregoing reasons, we reverse the decision of the circuit court of St. Clair County granting summary judgment in favor of Associated on its complaint for foreclosure and denying defendant's motion for summary judgment on his first affirmative defense. In doing so, we find that the deed conveyed immediate title to John in fee simple as a tenant in common while reserving a life estate in McShan and that, upon her death, the mortgage at issue was extinguished. Therefore, the March 20, 2025, judgment of foreclosure and sale, as well as any subsequent order that adversely affects John's interest in the property, are vacated. We affirm the circuit court's order granting summary judgment to Associated on John's counterclaim under the Act.

¶ 54    Affirmed in part, reversed in part, and vacated in part.

*Associated Bank, National Ass'n v. Morrison*, 2026 IL App (5th) 250622

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 23-FC-394; the Hon. Stacy L. Campbell, Judge, presiding. |
| **Attorneys for Appellant:** | Reuben Pradhan and Susan M. Simone, of Land of Lincoln Legal Aid, Inc., of East St. Louis, for appellant. |
| **Attorneys for Appellee:** | Karen C. Mitch and Julie Beyers, of Heavner, Beyers & Mihlar, LLC, of Decatur, for appellee. |